# EXHIBIT D

# Assumption and Assignment Agreement

# ASSUMPTION AND ASSIGNMENT AGREEMENT

THIS AGREEMENT (this "Agreement") is made and entered into as of December __, 2008, by and between _____ (the "Seller"), having a mailing address of 3241 Westerville Road, Columbus, Ohio 43224, and _____, a _____, having an office at _____ (the "Assignee").

# W I T N E S S E T H:

WHEREAS, Seller, as lessee, is party to a lease, dated _____ [as amended on _____] (the "Lease"), with _____, as lessor (the "Lessor"), for certain nonresidential real property located at _____, (the "Premises"), all as more fully described in the Lease;

WHEREAS, on October 26, 2008, the Seller, Value City Holdings, Inc. and certain of their affiliates (each a "Debtor", and collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code') in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court') and have since continued in the operation of their business and management of their property pursuant to sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, the Seller seeks to assume, assign and sell the Lease to the Assignee pursuant to sections 363(b), 363(f), 363(m), 365(a), 365(b) and 365(f) of the Bankruptcy Code; and

WHEREAS, the Seller and the Assignee desire to have the Bankruptcy Court approve the terms and conditions of the assumption, assignment and sale of the Lease.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth hereinafter, the receipt and sufficiency of which are hereby acknowledged, and subject to approval by the Bankruptcy Court, the parties hereto agree as follows:

1. ASSUMPTION, ASSIGNMENT AND SALE OF THE LEASE.

　　1.1　Upon the terms and conditions hereinafter set forth, the Seller hereby assumes, assigns and sells all of its rights, title and interests in and to the Lease to the Assignee, subject to the covenants and conditions contained therein, effective as of closing of the sale of the Lease. Such sale shall be subject to any exceptions to title and other matters which may affect the Lease and/or the Premises as of the date of this Agreement and to any exceptions to title and other matters which may affect the Lease and/or the Premises and which arise after the date of this Agreement other than as a result of the intentional acts or omissions of the Seller after the date hereof, provided that, pursuant to section 363(f) of the Bankruptcy Code, the Lease shall be sold and assigned free and clear of all liens, if any, which liens shall attach to the net proceeds received by the Seller hereunder.

　　1.2　Subject to Section 1.4 below, from and after the closing date of this assumption, assignment and sale of the Lease to the Assignee, neither the Seller nor the Debtors shall have

any further responsibilities, obligations, or responsibilities in respect of any claims arising from or relating to the Lease [and any pending litigation against the Seller or the Debtors brought in connection with the Seller's or the Debtors' responsibilities or obligations under the Lease shall be deemed dismissed as against the Seller and/or the Debtors] and the Assignee hereby assumes and shall be solely responsible for any and all such claims, responsibilities, obligations or responsibilities arising out of or relating to the Lease.

1.3 Pursuant to section 365(k) of the Bankruptcy Code, from and after the closing date of the assumption, assignment and sale of the Lease to the Assignee, the Assignee shall be assigned the Lease and shall timely and faithfully perform all of the covenants, obligations and responsibilities of the tenant under the terms of the Lease and agrees to hold the Seller and the Debtors harmless therefrom. The Assignee's obligations shall include, but is not limited to, the obligations (if obligations under the Lease), to pay percentage rent, real estate taxes and common area maintenance, if such amounts become due or subject to adjustment after closing.

1.4 Pursuant to section 365(k) of the Bankruptcy Code, with respect to any monies due and owing by the Seller under the terms of the Lease, up to but not including the closing date of the Seller's assumption, assignment and sale of the Lease to the Assignee, in respect of base rent, additional rent, percentage rent, taxes of any kind or nature, common area maintenance fees, insurance and any other charges payable to the Lessor under the Lease, Assignee, except as may otherwise be agreed, shall not be liable for the payment of such monies; provided, however, that the Assignee shall (a) be solely responsible for any and all base rent, additional rent, percentage rent, taxes of any kind or nature, common area maintenance fees, insurance and any other charges payable to the Lessor under the Lease from and after the closing date of the assumption, assignment and sale of the Lease to the Assignee, and (b) be liable for, or receive the benefit of, any year-end adjustments that fall short of, or exceed, the adjustments made pursuant to Sections 1.4 and 3.5 of this Agreement.

1.5 The closing shall be deemed to have occurred on the date on which Assignee shall have delivered to Seller all closing documents and monies pursuant to the terms hereof.

1.6 THE ASSUMPTION, ASSIGNMENT AND SALE OF THE LEASE TO THE ASSIGNEE IS SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT. THE ASSIGNMENT AND SALE OF THE LEASE TO THE ASSIGNEE WILL NOT OCCUR UNLESS AND UNTIL (A) THE COURT ENTERS AN ORDER APPROVING AND AUTHORIZING THE SELLER TO CONSUMMATE THE ASSUMPTION, ASSIGNMENT AND SALE OF THE LEASE TO THE ASSIGNEE, AND (B) THE ASSUMPTION, ASSIGNMENT AND SALE OF THE LEASE TO THE ASSIGNEE IS CONSUMMATED.

1.7 Sale of the Lease shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in or on the Premises and owned by the Seller. The Seller reserves the right either to sell such personal property to the Assignee or any other party, to abandon any or all of the personal property located on the Premises, or to make such other arrangements as may be appropriate. In the event of abandonment of the personal property, the Assignee shall be responsible for the removal thereof.

1.8     The sale of the Lease is "AS IS, WHERE IS AND WITH ALL FAULTS."  The Seller and its officers, directors, employees, agents and contractors, its attorneys, and its real estate consultants are not making nor will they make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Lease, the Premises or the accuracy or completeness of any information provided.

1.9     No right to use the Seller's corporate name or tradenames or its signage is being conveyed to the Assignee hereunder.

2.      REPRESENTATIONS, WARRANTIES AND COVENANTS OF ASSIGNEE.

The Assignee represents and warrants or covenants as follows:

2.1     The Assignee is a _____ duly organized, validly existing and in good standing under the laws of the State of _____ and is authorized to transact business as a foreign _____ in the State of _____.  The Assignee has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and has taken all necessary action to authorize the execution and performance of this Agreement and the consummation of the transactions contemplated herein, subject to the approval of the Bankruptcy Court.

2.2     Upon execution of this Agreement, the Assignee shall be bound by the terms hereof.

2.3     The Assignee agrees to indemnify and hold the Seller harmless from any liabilities, claims, losses, damages, costs, fees (including attorneys' fees) and disbursements incurred by the Seller arising from or out of the Assignee's obligations under this Agreement.

2.4     No actions or proceedings have been instituted against the Assignee or, to its knowledge, have been threatened against the Assignee, that will affect the consummation of this Agreement or the transactions contemplated thereby.

2.5     The Assignee shall, at Assignee's sole cost and expense, cooperate in good faith with the reasonable requests of the Seller regarding the procurement of Bankruptcy Court approval of this Agreement.  The Assignee shall be responsible for providing adequate assurance of future performance under the Lease and providing such other information as is necessary pursuant to the applicable provisions of section 365 of the Bankruptcy Code.

2.6     The Assignee acknowledges that no representations, promises or inducements of any kind, except as expressly set forth herein, have been made to the Assignee by the Seller or anyone else to induce the Assignee to sign this Agreement.

2.7     If the Seller terminates this Agreement for any reason, the Seller shall have no liability to the Assignee, except to return the Deposit pursuant to the provisions of this Agreement.

3. CONSIDERATION.

    3.1    The total consideration to be paid by Assignee to Seller is _____ dollars ($_____) (the "Purchase Price"). As of the date hereof, Assignee has deposited _____ dollars ($_____) (the "Deposit") with Seller. Seller agrees to hold the Deposit, to be distributed, as follows, upon the earliest of [two (2)] business days following:

    (a)    if the Assignee is determined to be the highest or otherwise best offer in compliance with the bidding procedures (the "Successful Bid"), upon the closing of the sale of the Lease to Assignee, to the Seller, or, upon the closing of the sale of the Lease to the Next Highest Bidder (as defined below), to the Assignee;

    (b)    if the Assignee is determined to be the next highest or otherwise best offer after the Successful Bid in compliance with the bidding procedures (the "Next Highest Bid"), upon the closing of the sale of the Lease to the Successful Bid, to the Assignee, or, upon the closing of the sale of the Lease to Assignee, to the Seller;

    (c)    entry of a final non-appealable order by the Bankruptcy Court disapproving the assignment to the Assignee, to the Assignee, subject to subsection (f) hereof;

    (d)    written notification to the Assignee by the Seller of the Seller's inability to close the sale, to the Assignee (See Section 3.2 below);

    (e)    written notification to the Seller by the Assignee of its inability to close the sale, to the Seller;

    (f)    upon breach of any covenant, representation or warranty made by Assignee hereunder, to the Seller.

    3.2    In the event that the Seller does not consummate a sale of the Lease to the Assignee for any reason, including the sale of the Lease to a party submitting a higher or otherwise better offer than the Assignee, but other than the Assignee's failure to consummate the sale, the Seller's sole obligation and liability shall be to refund the Deposit to the Assignee. In the event the Assignee breaches or repudiates this Agreement in any manner, including by failing to consummate timely the transaction described herein or execute and deliver the closing documents and monies pursuant to this Agreement for any reason, then the Seller may retain the Deposit and pursue any and all damages and remedies at law or in equity, including specific performance of this Agreement by the Assignee. This Section 3.2 shall survive the termination of this Agreement.

    3.3    The closing of the sale of the Lease shall take place within two (2) business days following approval by the Bankruptcy Court of the sale of such lease and the entry of an order of the Bankruptcy Court approving the assumption and assignment and sale of the Lease to the Assignee, or at such later time as may be designated by the Seller in its sole discretion, at the offices of Willkie Farr & Gallagher LLP. In respect of the closing of the sale of the Lease, time of performance by the Assignee is of the essence.

3.4 The balance of the Purchase Price shall be paid by the Assignee by wire transfer or an endorsed bank or certified check at the closing of the sale of the Lease.

3.5 All adjustments to be made in connection with the closing, including, without limitation, adjustments, if any, for rent under the Lease, shall be made as of midnight of the date immediately prior to the date of closing (the "Adjustment Date"). Any adjustments attributable to escalation or pass-through charges which would be billed after the Adjustment Date shall be made based upon the most recent billing received by the Seller for such charges. The Assignee shall (a) be liable for all obligations with respect to the Lease from the Adjustment Date forward and shall indemnify the Seller with respect thereto, and (b) be liable for, or receive the benefit of, any year-end adjustments that fall short of, or exceed, the adjustments made pursuant to Sections 1.4 and 3.5 of this Agreement.

3.6 All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the assignment and sale of the Lease shall be the sole responsibility of the Assignee and shall be paid to the Seller or to the title company at the closing of the sale.

4. GENERAL PROVISIONS; MISCELLANEOUS.

4.1 (a) NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS AGREEMENT TO THE CONTRARY, THE SELLER RETAINS, IN ITS SOLE AND ABSOLUTE DISCRETION, THE RIGHT TO TERMINATE THIS AGREEMENT WITHOUT PRIOR NOTICE, WITHOUT INCURRING ANY LIABILITY TO THE ASSIGNEE WITH RESPECT TO SUCH TERMINATION, AT OR PRIOR TO THE CLOSING FOR ANY AND ALL REASONS. THE ASSIGNEE SHALL NOT OBJECT TO SUCH TERMINATION, BUT SHALL BE ENTITLED TO THE RETURN OF ITS DEPOSIT IF ENTITLED TO SAME PURSUANT TO SECTION 3.2 HEREOF.

(b) Seller's obligation to consummate the sale of the Lease shall be subject to any applicable rights of consent on the part of Seller's lenders. In the event such consents shall not be obtained, Seller shall have the right to terminate this Agreement, in which event the Seller shall promptly return the Deposit to Assignee and neither party shall have any further rights or obligations hereunder, except for those rights and obligations expressly stated herein to survive the termination hereof.

4.2 Assignee's offer of the Purchase Price shall remain open and irrevocable until the earlier of (a) the entry of an order approving the sale of the Lease; and (b) fourteen (14) days after the date that any auction is held for the sale of the Lease.

4.3 All risk of casualty loss, including, but not limited to, water or fire loss with respect to the Premises shall remain with the Seller until the Adjustment Date. On and after the Adjustment Date, risk of casualty loss shall pass to the Assignee and Assignee shall be solely responsible for providing insurance to cover any risk of such loss or damage to the premises under the Lease.

4.4 In the event of an eminent domain taking or the issuance of a notice of an eminent domain taking with respect to all or substantially all of the Premises, this Agreement

shall terminate and the Seller shall promptly return the Deposit to Assignee and neither party shall have any further rights or obligations hereunder, except for those rights and obligations expressly stated herein to survive the termination hereof.  In the event of an eminent domain taking or the issuance of a notice of an eminent domain taking with respect to less than all or substantially all of the Premises, this Agreement shall remain in full force and effect, the Assignee shall be obligated to consummate this transaction for the full Purchase Price and the Assignee shall be entitled to receive all eminent domain awards and shall control all condemnation award proceedings.  To the extent the same may be necessary and appropriate, Seller shall assign to the Assignee, at closing, Seller's rights to such awards.

4.5 [The Seller and the Assignee each represents to the other that it has not dealt with any party acting as a broker or sales agent in connection with the transactions described in this Agreement other than Hilco Real Estate, LLC ("Hilco").]  Seller shall pay Hilco any fees due it pursuant to separate agreements to the extent provided in such separate agreements and any order of the Bankruptcy Court with respect thereto.  Each party agrees to indemnify and hold harmless the other party from and against any and all claims, expenses, fees or costs, including reasonable attorney's fees and disbursements, as a result of claims made by any person for brokerage commissions, or other fees, with respect to the transactions described in this Agreement, as a result of the untruth of the representations of the indemnifying party hereunder.  The provisions of this section shall survive the closing or termination of this Agreement.]

4.6 This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof as of the time this Agreement is executed and merges and supersedes all prior discussions, agreements and understanding of every and any nature between them and no warranty or representation shall be implied other than as expressly set forth or provided for in this Agreement.  The Debtors, at or before the Auction, may impose such other and additional terms and conditions as it determines to be in the best interest of the Debtors, their estates, creditors, and other parties in interest.

4.7 Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or enforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction or any other provision of this Agreement.

4.8 This Agreement shall be construed, interpreted and governed by the laws of the State of New York and the applicable provisions of the Bankruptcy Code without giving effect to any choice of law or conflicts of law provision.

4.9 This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original but each of which together shall constitute one and the same instrument.

4.10 The headings in the sections of this Agreement are inserted for convenience only and shall not constitute a part thereof.

4.11     Neither party shall be liable to the other for failure or delay in performance of any of its obligations under this Agreement caused by floods, earthquakes, other Acts of God, fires, wars, riots, strikes and similar hostilities, government regulations or actions, or other causes beyond such party's control or, without limitation, for any consequential or incidental damages arising from any of the foregoing.

4.12     The Bankruptcy Court shall retain jurisdiction over any matter arising from or relating to the assumption, assignment and sale of the Lease to the Assignee which involves the Seller or its property, and the parties consent to such jurisdiction.

4.13     Any notice, demand, request or other communication required to be given pursuant to the terms hereunder shall be in writing and either (i) sent by certified mail, return receipt requested, (ii) hand-delivered, with receipt acknowledged or (iii) sent by overnight courier, with receipt acknowledged, and addressed to the party to receive the notice at the following addresses:

| | |
|---|---|
| If to the Seller: | Value City Department Stores LLC<br>3241 Westerville Road<br>Columbus, Ohio 43224<br>Attention:  Stephen B. Darr |
| with a copy to: | Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attention:  John C. Longmire, Esq. |
| If to the Assignee: | [                    ]<br>[                    ]<br>Attention:  _____ |
| with a copy to: | [                    ]<br>[                    ]<br>Attention:  _____ |

Either party may change its address for notices by giving written notice to the other party.  Any notice shall be deemed received on the day received or receipt is refused.  Inability to deliver because of changed address of which no notice was given shall be deemed a receipt of such notice.

4.14     The terms, conditions and covenants of this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective nominees, successors, beneficiaries and permitted assignees.  The Assignee may not transfer, assign or encumber this Agreement or any interest herein, by operation of law or otherwise, without the prior written

consent of the Seller, and either (a) the consent of the Lessor of the Premises, to the extent required under the Lease, or (b) the approval of the Bankruptcy Court. A transfer, whether directly or indirectly, of 50% or more of the beneficial ownership interests in the Assignee or the right to direct the management and affairs of the Assignee shall be deemed a prohibited assignment for purposes of this section.

4.15 The Seller and the Assignee shall pay their own respective expenses, costs and fees (including attorneys' fees and disbursements) incurred in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement.

4.16 Neither party shall make any press release or other public announcement concerning this transaction without the prior written consent of the other party, which shall not be unreasonably withheld or delayed. Appearances in, or filings with, the Bankruptcy Court, any dealings with the official committee of unsecured creditors or Debtors' prepetition and postpetition lenders and notice to parties in interest in the Debtors' bankruptcy cases shall not be deemed a public announcement for purposes of this section.

4.17 The Seller and the Assignee each acknowledge and agree that the relationship between them is that of the Seller and the Assignee and this Agreement does not constitute a partnership, joint venture or any other association between them.

4.18 The submission of this Agreement to the Assignee or the Assignee's broker, agent or attorney for review or signature does not constitute an offer to sell the Lease, nor does it grant an option or other right to purchase the Lease. This writing shall have no binding force or effect until executed and delivered by the Assignee and by the Seller, and as set forth herein, shall be subject to the approval of the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto, by and through their duly authorized officers and agents, have caused this Agreement to be duly executed as of the day and year first above written.

**SELLER:**

[           ]

By:_____
   Name:
   Title:

**ASSIGNEE**

[           ]

By:_____
   Name:
   Title: