**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| VALUE CITY HOLDINGS, INC., <u>et al.</u>, | ) | Case No. 08-14197 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### FIRST AMENDED JOINT PLAN OF LIQUIDATION FOR
### VALUE CITY HOLDINGS, INC. AND ITS AFFILIATED DEBTORS

---

Dated: New York, New York
        March 18, 2010

**WILLKIE FARR & GALLAGHER LLP**
Counsel for Debtors
and Debtors In Possession

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINITIONS AND INTERPRETATION ............................................................1

ARTICLE II. SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ..................................11
    2.1    Substantive Consolidation of the Debtors for Purposes of Voting,
           Confirmation and Distribution. ................................................................11

ARTICLE III. ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S.
           TRUSTEE FEES AND PRIORITY TAX CLAIMS .......................................11
    3.1    Administrative Expense Claims ...............................................................12
    3.2    Fee Claims ................................................................................................13
    3.3    U.S. Trustee Fees. ....................................................................................14
    3.4    Priority Tax Claims. .................................................................................14

ARTICLE IV. CLASSIFICATION OF CLAIMS AND INTERESTS .......................................15
    4.1    Classification of Claims and Interests. ....................................................15
    4.2    Unimpaired Classes of Claims and Interests. ..........................................15
    4.3    Impaired Classes of Claims and Interests. ...............................................15
    4.4    Separate Classification of Secured Claims. ..............................................16

ARTICLE V. TREATMENT OF CLAIMS AND INTERESTS ................................................16
    5.1    Priority Non-Tax Claims (Class 1). ..........................................................16
    5.2    Secured Claims (Class 2). ........................................................................16
    5.3    Insurance Claims (Class 3). ......................................................................17
    5.4    General Unsecured Claims (Class 4). .......................................................17
    5.5    Equity Interests (Class 5). ........................................................................17
    5.6    Other Interests (Class 6). ..........................................................................18

ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
           REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR
           EQUITY INTERESTS .............................................................................18
    6.1    Class Acceptance Requirement. ................................................................18
    6.2    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
           "Cramdown". ............................................................................................18
    6.3    Elimination of Vacant Classes. ................................................................18
    6.4    Voting Classes. ........................................................................................19
    6.5    Confirmation of All Cases. .......................................................................19

ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................19
    7.1    The Liquidating Companies. ....................................................................19
    7.2    Directors and Officers. .............................................................................19
    7.3    Succession of Plan Administrator. ...........................................................19
    7.4    Post Effective Date Committee .................................................................20
    7.5    Liquidation of Estates and Distribution of Proceeds. ...............................20
    7.6    Wind-down Reserve. ................................................................................20

7.7     Designation and Powers of Plan Administrator. .......................................................21
7.8     Resignation, Death or Removal of Plan Administrator. ............................................23
7.9     Liquidation of the Debtors. .....................................................................................24
7.10    Creditors' Committee. .............................................................................................24

ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................25
8.1     Initial Distribution Date. .........................................................................................25
8.2     Maintenance of Disputed Claims Reserves. ...........................................................26
8.3     Subsequent Distributions. .......................................................................................26
8.4     Claims Distribution Fund and Distributions   to Holders of General
         Unsecured Claims. ..................................................................................................26
8.5     Investments by the Liquidating Companies. ...........................................................29
8.6     Delivery of Distributions. .......................................................................................29
8.7     Record Date for Distributions. ................................................................................30
8.8     Distributions to Holders of Claims—Generally ......................................................30
8.9     Unclaimed Property. ...............................................................................................32

ARTICLE IX. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT  AND
             UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ................................32
9.1     Objections to Claims. ..............................................................................................32
9.2     Estimation of Disputed Claims and Interests. .........................................................33
9.3     Insurance Preservation and Proceeds. .....................................................................33
9.4     Amendments to Claims. ..........................................................................................33
9.5     No Recourse to Liquidating Companies or Plan Administrator. ..............................34

ARTICLE X. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
             LEASES ...........................................................................................................34
10.1    Rejection of Executory Contracts and Unexpired Leases. .......................................34
10.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..............35
10.3    Completion of Non-Assignable Contract. ...............................................................35
10.4    Cure of Defaults for Assumed Executory   Contracts and Unexpired
         Leases. .....................................................................................................................35
10.5    Indemnification of Directors, Officers and Employees. .........................................36

ARTICLE XI. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .............................36
11.1    Conditions to Confirmation. ...................................................................................36
11.2    Conditions to Consummation. .................................................................................36
11.3    Waiver of Conditions Precedent. ............................................................................37
11.4    Effect of Nonoccurrence of the Conditions to Consummation. ...............................37

ARTICLE XII. EXCULPATION, INJUNCTION AND RELATED PROVISIONS
             EFFECT OF CONFIRMATION ....................................................................38
12.1    Binding Effect. ........................................................................................................38
12.2    Vesting of Assets. ...................................................................................................38
12.3    Release of Claims Against and Interests in the Debtors. .........................................38
12.4    Term of Pre-Confirmation Injunctions or Stays. .....................................................38
12.5    Injunction Against Interference With Plan. .............................................................38

12.6    Injunction. .................................................................................................39

12.7    Releases. .................................................................................................39

12.8    Exculpation and Limitation of Liability. ................................................41

12.9    Injunction Related to Releases and Exculpation. ...................................41

12.10  Retention of Causes of Action/Reservation of Rights. ..........................41

12.11  Vesting of Causes of Action. .................................................................42

12.12  Releases of Liens. ..................................................................................42

ARTICLE XIII. RETENTION OF JURISDICTION ....................................................42

ARTICLE XIV. MISCELLANEOUS PROVISIONS....................................................44

14.1    Exemption from Certain Transfer Taxes................................................44

14.2    Termination of Professional Engagements. ...........................................44

14.3    Amendments. ..........................................................................................44

14.4    Revocation or Withdrawal of the Plan. ..................................................45

14.5    Confirmation Order. ...............................................................................45

14.6    Severability. ...........................................................................................45

14.7    Governing Law. ......................................................................................45

14.8    Time. ......................................................................................................45

14.9    Notices. ..................................................................................................45

14.10  Reservation of Rights. ............................................................................47

# INTRODUCTION

Value City Holdings, Inc. ("**Value City**") and the other debtors and debtors-in-possession in the above-captioned cases, as set forth on Exhibit A hereto, propose the following joint plan of liquidation for the resolution of the outstanding Claims[1] against and Interests in the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, disposition of their inventory, leases, and other assets, Wind-down of their estates, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, certain tax matters, and consideration to be distributed under the Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019 and Sections 14.3 and 14.4 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

The only Persons that are entitled to vote on the Plan are the holders of General Unsecured Claims. Such Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement and the respective schedules and exhibits attached thereto and referenced therein, and approved by the Bankruptcy Court have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

### A.     Defined Terms.

**1.1.** *503(b)(9) Claims* means Claims that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.2.** *Administrative Expense Bar Date* means the first Business Day that is forty-five (45) days after the Effective Date.

**1.3.** *Administrative Expense Claims* means Claims for costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); and (b) 503(b)(9) Claims, but not including Fee Claims or U.S. Trustee Fees.

---

[1]     All capitalized terms used but not defined herein shall have the meanings set forth in Article I herein.

**1.4.** *Affiliate* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.5.** *Allowed Claim* or *Allowed [_____] Claim* or *Allowed [_____] Interest* (with respect to a specific type of Claim or Interest, if specified) means: (a) any Claim (or a portion thereof) against or Interest in a Debtor that is (i) either: (A) scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed on the Schedules; or (B) proof of such Claim has been timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Bankruptcy Court, or late filed with leave of Bankruptcy Court, and as to which the deadline or applicable period of limitation fixed by applicable law or order of the Bankruptcy Court to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto has passed; or (b) any Claim or Interest or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only, (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed. An Allowed Claim shall: (a) include a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (b) be net of any setoff amount of any claim that may be asserted by any Debtor against the holder of such Claim, which amount shall be deemed to have been set off in accordance with the provisions of the Plan, and in particular Section 8.8(j) hereof.

**1.6.** *Avoidance Actions* means any and all avoidance, recovery, subordination or other actions or remedies against Persons that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions, settlements or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**1.7.** *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.8.** *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.9.** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.10.** *Bar Date* means any deadline for filing proofs of Claim, including but not limited to, Rejection Claims, 503(b)(9) Claims and Administrative Expense Claims, as established by an order of the Bankruptcy Court or under the Plan.

**1.11.** *Business Day* means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.12.** *Cash* means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items.

**1.13.** *Causes of Action* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions of any of the Debtors, the Debtors-in-Possession, and/or the Estates that are pending or may be asserted against any Person or Entity on or after the date hereof, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

**1.14.** *Causes of Action Recoveries* means any and all net recoveries from the prosecution or settlement of the Causes of Action that are not released pursuant to the Plan or the Confirmation Order.

**1.15.** *Chapter 11 Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and jointly administered under the case name *In re Value City Holdings, Inc., et al.*, No. 08-14197 (JMP).

**1.16.** *Claim* means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code), including a Claim arising after the Petition Date, against a Debtor.

**1.17.** *Claims Agent* means the agent of the Clerk of the Bankruptcy Court, Epiq Bankruptcy Solutions, LLC, retained in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court, dated October 27, 2008, to perform noticing, claims processing, balloting and other services, including receiving, maintaining, recording and otherwise administering proofs of claim filed in the Chapter 11 Cases.

**1.18.** *Claims Distribution Fund* shall have the meaning ascribed to such term in Section 8.4.

**1.19.** *Class* means a category of holders of Claims or Interests as set forth in Article IV pursuant to section 1122(a) of the Bankruptcy Code.

**1.20.** *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.21.** *Confirmation Hearing* means a hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.22.** *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.23.** *Creditors' Committee* means the official committee of unsecured creditors for the Chapter 11 Cases appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

**1.24.** *Cure Amount* shall have the meaning ascribed to such term in Section 10.4.

**1.25.** *Cure Dispute* shall have the meaning ascribed to such term in Section 10.4.

**1.26.** *Cure Schedule* shall have the meaning ascribed to such term in Section 10.4.

**1.27.** *Debtors* or *Debtors-in-Possession* means Value City and each of its affiliated debtors and debtors in possession in the Chapter 11 Cases, as set forth on <u>Exhibit A</u> hereto.

**1.28.** *Disallowed Claim* or *Disallowed [_____] Claim* or *Disallowed [_____] Interest* means a Claim or Interest that, pursuant to a finding of the Bankruptcy Court or other court of competent jurisdiction, a Final Order, or provision in the Plan, as the case may be, shall not be Allowed.

**1.29.** *Disclosure Statement* means the disclosure statement, dated March 18, 2010, that relates to the Plan, as such disclosure statement may be amended, modified, or supplemented (including all exhibits and schedules annexed thereto or referred to therein).

**1.30.** *Disclosure Statement Hearing* means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.31.** *Disclosure Statement Order* means that order of the Bankruptcy Court, dated March 18, 2010, approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.32.** *Disputed Claim* means that portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim.

**1.33.** *Disputed Claims Reserve*s means, collectively, the Disputed General Unsecured Claims Reserve and the Disputed Priority Claims Reserve.

**1.34.** *Disputed General Unsecured Claims Reserve* shall have the meaning ascribed to such term in Section 8.4(b).

**1.35.**   *Disputed Priority Claims Reserve* shall have the meaning ascribed to such term in Section 8.1.

**1.36.**   *Distributable Cash* shall have the meaning ascribed to such term in Section 8.4(b).

**1.37.**   *Distribution Record Date* means the date provided in the Confirmation Order as the record date for distributions under the Plan.

**1.38.**   *Distributions* means the distributions to be made hereunder by the Liquidating Companies to holders of Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, and Allowed General Unsecured Claims.

**1.39.**   *Effective Date* means the date selected by the Debtors that is a Business Day after the entry of the Confirmation Order on which:  (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Section 11.2 have been (i) satisfied or (ii) waived pursuant to Section 11.3.

**1.40.**   *Entity* means an "entity" (as that term is defined in section 101(15) of the Bankruptcy Code).

**1.41.**   *Equity Interest* means any equity interest in a Debtor, including, but not limited to any common equity interest in a Debtor that existed immediately prior to the Petition Date, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time.

**1.42.**   *Estate* means the estate of a Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

**1.43.**   *Estimation Order* means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.44.**   *Fee Claim* means a Claim by a Professional for Professional Fees.

**1.45.**   *Final Fund Distribution* shall have the meaning ascribed to such term in Section 8.4(c).

**1.46.**   *Final Order* means an order, ruling or judgment that (a) is in full force and effect, (b) is not stayed, and (c) is no longer subject to review, reversal, modification or amendment, by appeal or writ of certiorari; *provided*, *however*, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or the Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

**1.47.**   *General Unsecured Claim* means any Claim against a Debtor, other than: (a) an Administrative Expense Claim; (b) a Fee Claim; (c) a Priority Tax Claim; (d) a Priority Non-Tax Claim; (e) a Secured Claim (f) an Insurance Claim; (g) an InterCompany Claim; and (h) a Claim on account of any guaranty or similar obligation of the Debtors relating to the foregoing types of Claims identified in this Section 1.50(a)-(h).  General Unsecured Claims include, but are not limited to (w) Claims relating to or arising out of environmental laws of the United States or any state, city or municipality, (x) Rejection Claims, (y) any deficiency claims (except as otherwise ordered by the Bankruptcy Court), and (z) Claims (except as set forth in the preceding sentence) based on or arising out of acts, conduct or events occurring prior to the Petition Date, whether or not such acts, conduct or events occurred in the ordinary course of the Debtors' businesses, and whether or not a lawsuit based on the acts, conduct or events was filed prior to the Petition Date against a Debtor.

**1.48.**   *Holdback Amount* means, with respect to Professional Fees, amounts held back pursuant to an order or orders of the Bankruptcy Court in the Chapter 11 Cases, including the Order Pursuant to Section 105(a) and 331 of the Bankruptcy Code Establishing Procedures for the Interim Compensation and Reimbursement of Expenses of Professionals, dated November 19, 2008.

**1.49.**   *Holdback Amount Reserve* means, with respect to Professional Fees, a reserve established by the Debtors on the Effective Date for the benefit of the Professionals, and to be held in trust for the Professionals, for the payment of the Holdback Amount.

**1.50.**   *Impaired* means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123 and 1124 of the Bankruptcy Code.

**1.51.**   *Initial Distribution Date* means the date on which the Debtors or the Liquidating Companies shall make their initial Distribution, which shall be a date selected by the Debtors or the Liquidating Companies, as applicable.

**1.52.**   *Initial Fund Distribution Date* shall have the meaning ascribed to such term in Section 8.4(c).

**1.53.**   *Insurance Claim* means any Claim the holder of which is entitled to proceeds available under any Insurance Policy on account of such Claim, but only to the extent of such entitlement.

**1.54.**   *Insurance Policy* means any policy of insurance, together with any agreements relating thereto, that is available to provide coverage for Claims, including but not limited to policies providing coverage for personal injury claims, employment discrimination claims, claims against directors and officers, worker's compensation claims or other claims against a Debtor.

**1.55.**   *InterCompany Claim* means any Claim, Cause of Action, remedy or Administrative Expense Claim held by a Debtor against another Debtor.

**1.56.**   *Interest* means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtors.

**1.57.** *Liquidation Analysis* means that certain chapter 7 liquidation analysis attached as Exhibit B to the Disclosure Statement.

**1.58.** *Liquidating Companies* means the Debtors, or successors thereto, on and after the Effective Date, as reorganized pursuant to the Plan.

**1.59.** *Minority Interest(s)* shall have the meaning ascribed to such term in Section 5.5.

**1.60.** *Non-Assignable Contract* shall have the meaning ascribed to such term in Section 10.3.

**1.61.** *Other Interests* means any Interests in the Debtors other than Equity Interests, including, but not limited to, any warrants, options, or rights to receive or purchase shares of the Debtors' stock and any preferred shares authorized to be issued by the Debtors.

**1.62.** *Petition Date* means, with respect to Value City, Value City Department Stores LLC, Value City Department Stores Services, Inc., Value City of Michigan, Inc., Gramex Retail Stores, Inc., GB Retailers, Inc., and J.S. Overland Delivery Inc., October 26, 2008 and, with respect to Retail Ventures Jewelry Inc., and VCHI Acquisition Co., October 27, 2008.

**1.63.** *Periodic Fund Distribution Date* shall have the meaning ascribed to such term in Section 8.4(c).

**1.64.** *Person* means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization.

**1.65.** *Plan* means this joint chapter 11 plan of liquidation proposed by the Debtors, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.66.** *Plan Administrator* means the Person or Persons appointed as such pursuant to the Confirmation Order.

**1.67.** *Plan Administrator Agreement* means that certain agreement setting forth the terms pursuant to which the Plan Administrator shall be appointed, terminated, and shall administer these Estates in accordance with the provisions of the Plan, to be filed as an exhibit to the Plan or before five (5) business days prior to the Confirmation Hearing.

**1.68.** *Post-Confirmation Committee* shall have the meaning ascribed to such term in Section 7.4.

**1.69.** *Priority Non-Tax Claim* means any Claim against the Debtors, other than an Administrative Expense Claim, a Fee Claim and a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.70.** *Priority Tax Claim* means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) against the Debtors of the kind entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.71.** *Professional(s)* means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 330, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

**1.72.** *Professional Fees* means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses related thereto that are awardable and allowable under section 328, 330(a), 331, 503(b) or 1103(a) of the Bankruptcy Code or otherwise and that are rendered (a) prior to the Effective Date, or (b) thereafter in connection with (i) applications filed pursuant to section 330, 331, 503(b) or 1103(a) of the Bankruptcy Code and (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals retained in the Chapter 11 Cases, except to the extent (x) that the Bankruptcy Court has disallowed or denied authority to pay or reimburse such fees and expenses by a Final Order, or (y) any such fees and expenses have previously been paid, regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Professional Fees.

**1.73.** *Pro-Rata Share* means the amount (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims; plus (b) Disputed Claims (in their aggregate face amounts) in such Class as of the date of determination (i) as calculated by the Liquidating Companies on or before the date of any Distribution with respect to such Claim or (ii) as determined by the Bankruptcy Court.

**1.74.** *Rejection Claim* means any Claim arising from the rejection of any executory contract or unexpired lease, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property, as such claim shall be calculated in accordance with section 502(b)(6) of the Bankruptcy Code, and (b) an employee for damages resulting from the rejection of an employment agreement, as such Claim shall be calculated in accordance with section 502(b)(7) of the Bankruptcy Code.

**1.75.** *Released Parties* means, collectively, each of the Debtors' respective parents (other than RVI or any parent or non-Debtor subsidiary of RVI), subsidiaries and affiliates (not including the Debtors, RVI or any parent or non-Debtor subsidiary of RVI) and each of the foregoing's and the Debtors' current and former shareholders (other than the Debtors, RVI or any parent or non-Debtor subsidiary of RVI), directors, officers, agents, employees, attorneys, consultants, professional advisors, and the Creditors' Committee and its members, attorneys, consultants and professional advisors, in each case, serving in such capacity on or after January 23, 2008.

**1.76.** *RVI* means Retail Ventures, Inc.

**1.77.** ***Schedules*** mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

**1.78.** ***Secured Claim*** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is a secured claim against a Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.79.** ***Subsequent Distribution Date*** means the date(s) on which the Liquidating Companies or the Plan Administrator shall make a Distribution, after the Initial Distribution Date, which subsequent date(s) shall be selected by the Liquidating Companies in accordance with the terms of the Plan.

**1.80.** ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

**1.81.** ***Unclaimed Property*** means any Cash and other property unclaimed on or after the Effective Date or date on which a Distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed pursuant to Section 8.6 hereof and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or undeliverable in accordance with Section 8.6 of the Plan.

**1.82.** ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

**1.83.** ***U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

**1.84.** ***Value City*** shall have the meaning ascribed to such term in the introduction.

**1.85.** ***VCHI Acquisition*** means VCHI Acquisition Co., a Debtor herein.

**1.86.** ***Wind-down*** means the work necessary to administer the Plan, liquidate the Debtors' remaining assets, collect or recover the Debtors' assets and claims, prosecute claims and Causes of Action and pay the expenses and costs set forth in the Wind-down Budget.

**1.87.** ***Wind-down Budget*** means a budget to be prepared by the Debtors, with input from the Creditors' Committee, and which shall be subject to the approval of the Bankruptcy Court in connection with the Confirmation Order and which may be amended from time to time

after entry of the Confirmation Order, and shall estimate the funds necessary to administer the Plan, continue the Wind-Down of the Liquidating Companies, and unwind the Debtors' affairs, including the costs of holding and liquidating the Estates' remaining property, objecting to Claims, making the Distributions required by the Plan, prosecuting claims and Causes of Action that may be held by the Estates against third parties that are not released, waived or transferred pursuant to the Plan (including pursuant to Article XII) or otherwise, paying taxes, filing tax returns, paying professionals' fees, funding payroll and other employee costs, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Plan Administrator, and creating appropriate reserves for all such items and other costs of administering the Plan, the Estates and the Liquidating Companies.

      **1.88.** *Wind-down Reserve* shall have the meaning ascribed to such term in Section 7.6.

      **B.** *Interpretation; Application of Definitions and Rules of Construction.*

      Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Any capitalized term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. Except for the rules of construction contained in sections 102(5) and 102(8) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in the Plan to a contract, instrument, release, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

      **C.** *Appendices and Related Documents.*

      All supplements and/or exhibits to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. To the extent there is an inconsistency between any of the provisions of the Plan and any supplements and/or exhibits to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. Holders of Claims and Interests may inspect a copy of the Plan, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or obtain additional copies of the Plan by a written request sent to the following address:

         Epiq Bankruptcy Solutions, LLC
         757 Third Avenue, 3rd Floor
         New York, NY 10017
         Attention: Value City Balloting
         Telephone: (866) 405-5263

# ARTICLE II.

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

**2.1**      ***Substantive Consolidation of the Debtors for Purposes of Voting, Confirmation and Distribution.***

(a) This Plan provides for substantive consolidation of the Debtors' Estates, but solely for purposes of voting, confirmation, and making distributions to the holders of Allowed Claims and Allowed Interests under the Plan. Notwithstanding anything herein to the contrary, the Debtors shall not be merged or consolidated and shall maintain their pre-Effective Date corporate structure. On the Effective Date: (i) all guarantees by any Debtor of the payment, performance or collection by another Debtor with respect to Claims against such second Debtor, and all Claims based on such guarantees, shall be deemed eliminated, cancelled, released and of no further force and effect; (ii) any obligation of any Debtor and all guarantees by another Debtor with respect to Claims of the first Debtor shall be treated as a single obligation; (iii) each Claim against any Debtor shall be deemed to be against the consolidated Debtors and shall be deemed a single Claim against, and a single obligation of, the consolidated Debtors; and (iv) all InterCompany Claims shall be deemed eliminated as a result of the substantive consolidation of the Debtors, and therefore holders thereof shall not be entitled to vote on the Plan, or receive any Distributions or other allocations of value under the Plan. Except as set forth in this Section 2.1, such substantive consolidation shall not (other than for purposes related to the Plan) (y) affect the legal and corporate structure of the Liquidating Companies or (z) affect any obligations under any leases or contracts assumed in the Plan or otherwise after the Petition Date.

(b) Notwithstanding the substantive consolidation of the Debtors for the purposes set forth in Section 2.1(a) herein, the Liquidating Companies shall pay all U.S. Trustee Fees on all disbursements, including Distributions under the Plan and disbursements in and outside of the ordinary course of business, until the entry of a Final Order closing its Chapter 11 Case, dismissal of its Chapter 11 Case, or conversion of its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

# ARTICLE III.

## ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtors have not been classified, and the holders thereof are not entitled to vote on the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

**3.1** *Administrative Expense Claims.*

(a) Time for Filing Administrative Expense Claims.

Each holder of an Administrative Expense Claim, other than the holder of:

(1) a Fee Claim;

(2) a 503(b)(9) Claim;

(3) an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(4) an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

(5) Claims for indemnification, contribution, or advancement of expenses pursuant to (A) any Debtor's certificate of incorporation, by-laws, or similar organizational document or (B) any indemnification or contribution agreement approved by the Bankruptcy Court;

(6) an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date; or

(7) U.S. Trustee Fees;

must file with the Claims Agent at the following addresses:

| If Delivered by Mail: | If Delivered by Overnight or Hand Delivery: |
|---|---|
| Value City Department Stores Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC FDR Station, P.O. Box 5011 New York, NY 10150-5011 | Value City Department Stores Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC 757 Third Avenue, 3rd Floor New York, NY 10017 |

and serve on the Debtors or the Liquidating Companies in accordance with Section 14.9 herein, proof of such Administrative Expense Claim by the Administrative Expense Bar Date. Such proof of Administrative Expense Claim must include at a minimum (i) the name of each Debtor that is purported to be liable for the Administrative Expense Claim, (ii) the name of the holder of the Administrative Expense Claim, (iii) the amount of the Administrative Expense Claim, (iv) the basis of the Administrative Expense Claim, and (v) supporting documentation for the

Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

(b)  Treatment of Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to different treatment, on, or as soon as is reasonably practicable after, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Claim; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, may be paid by the Debtors in the ordinary course, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

**3.2**      *Fee Claims.*

(a)  Time for Filing Fee Claims.

All Fee Claims must be filed with the Bankruptcy Court and served on the Debtors no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Fee Claims shall be determined by the Bankruptcy Court.  **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING FEE CLAIMS BEING FOREVER BARRED AND DISCHARGED.**

Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than seventy-five (75) days after the Effective Date or such other date as may be established by the Bankruptcy Court.

(b)  Treatment of Fee Claims.

A Fee Claim in respect of which a final fee application has been properly filed and served pursuant to Section 3.3(a) shall be payable to the extent approved by order of the Bankruptcy Court.  Subject to the Holdback Amount, on the Effective Date, or as soon thereafter as reasonably practicable, to the extent not otherwise paid, all Allowed Professional Fees (including estimated fees through the Effective Date) shall be paid in full in Cash.  To receive payment on the Effective Date for unbilled fees and expenses incurred through the Effective Date, each Professional shall reasonably estimate fees and expenses due for unbilled fees and expenses for periods that will not have been billed as of the Effective Date and shall deliver such estimates to the Debtors and the U.S. Trustee prior to the Effective Date.  If the estimated payment received by such Professional exceeds the actual allowed Professional Fees for the estimated period, such excess amount shall be deducted from the Holdback Amount for such Professional and if the Holdback Amount is insufficient, such Professional shall disgorge the difference.  If the

estimated payment received by the Professional is lower than the allowed Professional Fees of such Professional, the difference shall be promptly paid to the Professional.

On the Effective Date, the Liquidating Companies shall fund the Holdback Amount Reserve for payment of the Holdback Amount. Upon final allowance by the Bankruptcy Court of the Professional Fees, or entry of an earlier order of the Bankruptcy Court granting the release of the Holdback Amount, such amount, less any excess paid in connection with estimated fees and expenses through the Effective Date, shall be paid promptly and directly to the Professionals.

### 3.3 *U.S. Trustee Fees.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall pay all U.S. Trustee Fees that are due and owing on the Effective Date. For the avoidance of doubt, nothing in this Plan shall release the Debtors from their obligation to pay all U.S. Trustee Fees due and owing after the Effective Date.

### 3.4 *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in the Debtors' discretion, either (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim; *provided*, *however,* that, all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

# ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1** ***Classification of Claims and Interests.***

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Insurance Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |
| Class 6 | Other Interests | Impaired | No (deemed to reject) |

**4.2** ***Unimpaired Classes of Claims and Interests.***

The following Classes of Claims and Interests are Unimpaired and, therefore, deemed to have accepted the Plan and are not entitled to vote on the Plan under section 1126(f) of the Bankruptcy Code.

(a) Class 1: Class 1 consists of all Non-Tax Priority Claims.

(b) Class 2: Class 2 consists of all Secured Claims.

(c) Class 3: Class 3 consists of all Insurance Claims.

**4.3** ***Impaired Classes of Claims and Interests.***

The following Classes of Claims are Impaired and are entitled to vote on the Plan.

(a) Class 4: Class 4 consists of all General Unsecured Claims.

The following Classes of Interests are Impaired and deemed to have rejected the Plan and, therefore, are not entitled to vote on the Plan under section 1126(g) of the Bankruptcy Code.

(a) Class 5: Class 5 consists of all Equity Interests.

(b) Class 6: Class 6 consists of all Other Interests.

**4.4**     ***Separate Classification of Secured Claims.***

Although all Secured Claims against the Debtors have been placed in one category for purposes of nomenclature, each such Secured Claim, to the extent secured by liens or security interests separate from those liens or security interests securing other Secured Claims, shall be treated as being in a separate Class from such other Secured Claims for purposes of voting on the Plan and receiving Plan Distributions.

## ARTICLE V.

## TREATMENT OF CLAIMS AND INTERESTS

**5.1**     ***Priority Non-Tax Claims (Class 1).***

(a) <u>Treatment</u>:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on, or as soon as is reasonably practicable after, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim, the holder of such Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Claim.

(b) <u>Voting</u>:  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept the Plan and the votes of such holders will not be solicited with respect to such Priority Non-Tax Claims.

**5.2**     ***Secured Claims (Class 2).***

(a) <u>Treatment</u>:  Except to the extent that a holder of an Allowed Secured Claim agrees to different treatment, on or as soon as is reasonably practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Secured Claim becomes an Allowed Claim, the holder of each Secured Claim shall release any and all liens against and security interests in the Debtors' (and the Estates') property held by the Prepetition Lenders and the holder of an Allowed Secured Claim shall receive, at the election of the Debtors: (i) Cash in an amount equal to such Claim; or (ii) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Allowed Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Debtor or the Liquidating Companies, without further notice to or order of the Bankruptcy Court.  Each holder of an Allowed Secured Claim shall retain the liens securing its Allowed Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Secured Claim is made as provided herein.  Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction of such obligations, the liens securing such Allowed Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b) Voting:  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Secured Claims are conclusively presumed to accept the Plan and the votes of such holders will not be solicited with respect to such Secured Claims.

### 5.3        *Insurance Claims (Class 3).*

(a) Treatment:  Except to the extent that a holder of an Allowed Insurance Claim agrees to different treatment, each holder of an Allowed Insurance Claim shall be paid 100% of the unpaid Allowed amount of such Claim in Cash, solely from any proceeds available under applicable Insurance Policies or programs, in each case as funded by third parties.  If and to the extent the allowed amount of such Allowed Claim is not entitled to be paid in full under the applicable Insurance Policy, such portion not entitled to proceeds available under the Applicable Insurance Policies shall be treated as a General Unsecured Claim or as a Claim in such other Class as is applicable.

(b) Voting:  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Insurance Claims are conclusively presumed to accept the Plan and the votes of such holders will not be solicited with respect to such Insurance Claims.

### 5.4        *General Unsecured Claims (Class 4).*

(a) Treatment: Each holder of an Allowed General Unsecured Claim shall receive, on account of such Allowed Claim, on the Initial Distribution Date and each Subsequent Distribution Date, as applicable in accordance with Section 8.4 hereof, Cash in the amount of such holder's Pro-Rata Share of the Distributable Cash in the Claims Distribution Fund.

(b) Voting:  The General Unsecured Claims are Impaired Claims, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.  The votes of holders of Class 4 Claims will be solicited with respect to such General Unsecured Claims.

### 5.5        *Equity Interests (Class 5).*

(a) Treatment:  Each holder of an Equity Interest in VCHI Acquisition shall receive no Distribution on account of such Equity Interest.  All Equity Interests in VCHI Acquisition shall be deemed canceled as of the Effective Date.  All holders of Equity Interests in VCHI Acquisition shall be deemed to have rejected the Plan.  Each holder of an Equity Interest in Value City, other than VCHI Acquisition, shall receive no Distribution on account of such Equity Interest (each such Interest, a "**Minority Interest**").  All Minority Interests shall be deemed canceled as of the Effective Date, and all holders of such Minority Interests shall be deemed to have rejected the Plan.  All Equity Interests in the Debtors other than (i) Equity Interests in VCHI Acquisition and (ii) Minority Interests shall not be canceled, and shall continue in place following the Effective Date, solely for the purpose of maintaining the existing corporate structure of the Debtors and the Liquidating Companies.  If and to the extent the terms of the immediately preceding sentence are not approved by the Bankruptcy Court, and Equity Interests other than (i) Equity Interests in VCHI Acquisition and (ii) Minority Interests are required to be canceled, then the applicable Debtors shall issue such new common stock, to the Liquidating Companies that are the successors to the Debtor holders of such Equity Interests, as

may be required to maintain through the Liquidating Companies the existing corporate structure of the Debtors.

(b) Voting:  In accordance with section 1126(g) of the Bankruptcy Code, all holders of Equity Interests in VCHI Acquisition or Minority Interests shall be deemed to have rejected the Plan.  The holders of Equity Interests (other than the holders of Equity Interests in VCHI Acquisition or Minority Interests) are conclusively presumed to accept the Plan.  The votes of such holders of Equity Interests will not be solicited with respect to such Interests.

### 5.6 *Other Interests (Class 6).*

(a) Treatment:  On the Effective Date, all Other Interests shall be cancelled. Holders of Other Interests shall not receive or retain any distribution under the Plan on account of such Other Interests.

(b) Voting:  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Other Interests are conclusively presumed to reject the Plan and the votes of such holders will not be solicited with respect to such Other Interests.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF
## THE PLAN; EFFECT OF REJECTION BY ONE
## OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

### 6.1 *Class Acceptance Requirement.*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of Allowed Claims in such Class that vote on the Plan.  A Class of Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) of the Interests in such Class that actually vote on the Plan.

### 6.2 *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown".*

Because certain Classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  The Debtors may also request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plan.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any related documents, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### 6.3 *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not contain a holder of a Claim or Interest that has either been scheduled by the Debtors on their Schedules or has filed a proof of claim as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of

voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.4 *Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

### 6.5 *Confirmation of All Cases.*

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; *provided*, *however*, that the Debtors, in their sole discretion, may at any time waive the requirements of this Section 6.5.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1 *The Liquidating Companies.*

The Debtors shall continue to exist (notwithstanding the substantive consolidation set forth in Section 2.1 of the Plan) as the Liquidating Companies on and after the Effective Date, with all of the powers of corporations under applicable law. The certificates of incorporation and by-laws of the Liquidating Companies shall, inter alia, prohibit the issuance of nonvoting stock to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, VCHI Acquisition shall issue ten shares of new common stock to the Plan Administrator in exchange for payment of one dollar ($1.00). On the Effective Date, all property of the Debtors shall vest in the Liquidating Companies, free and clear of all Claims, Interests, liens, charges or other encumbrances.

### 7.2 *Directors and Officers.*

On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of each of the Debtors shall be terminated (without cause) and such directors and officers shall be deemed to have resigned without the necessity of any act on the part of such parties.

### 7.3 *Succession of Plan Administrator.*

On the Effective Date, the Plan Administrator shall be appointed pursuant to the terms of the Plan Administrator Agreement and shall succeed to such powers as would have been applicable to the Liquidating Companies' officers, directors and shareholders, and the Liquidating Companies shall be authorized to be (and, upon the conclusion of the Wind-down of their affairs, shall be) dissolved by the Plan Administrator. On the Effective Date, the Plan Administrator shall establish and fund the Wind-down Reserve, the Holdback Amount Reserve, the Disputed Claims Reserves, and the Claims Distribution Fund in accordance with the terms

hereof. All other property of the Estates, including the Causes of Action, not distributed to the holders of Claims on the Effective Date shall be managed by the Plan Administrator and shall be held in the name of the Debtors or the Liquidating Companies free and clear of all Claims against the Debtors and Interests, except for the rights to such Distribution afforded to the holders of Allowed Claims and Interests under the Plan. The Plan Administrator shall make the remaining Distributions required under the Plan in accordance with the Plan's terms. After the Effective Date, the Debtors shall have no liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered and actions will be taken in the name of the Debtors or Liquidating Companies through the Plan Administrator irrespective of whether any of the Debtors or the Liquidating Companies have been dissolved. The Plan Administrator shall comply with all applicable provisions of the Plan.

### 7.4     *Post Effective Date Committee*

As of the Effective Date, a post-confirmation committee, consisting of three members of the Creditors' Committee (the "**Post-Confirmation Committee**"), shall be formed. The members of the Post-Confirmation Committee shall be identified in the Confirmation Order. The Plan Administrator shall consult with the Post-Confirmation Committee regarding the progress of the Wind-down, the prosecution and settlement of Causes of Action, objections to Claims and the disposition of property of the Debtors and the Liquidating Companies.

Members of the Post-Confirmation Committee shall not receive compensation for their services, nor shall they or the Post-Confirmation Committee retain any professionals (other than the Liquidating Companies' existing professionals) at the Liquidating Companies' expense; provided, however, that members of the Post-Confirmation Committee may be reimbursed by the Liquidating Companies for reasonable and documented out-of-pocket expenses incurred in the performance of their duties as members of the Post-Confirmation Committee.

### 7.5     *Liquidation of Estates and Distribution of Proceeds.*

After the Effective Date, all non-Cash assets of the Estates not previously released, disposed of or transferred shall be sold or otherwise liquidated or abandoned. Any net proceeds of such sale or other liquidation shall be transferred first, to the Wind-down Reserve to the extent not fully funded, and second, to the Claims Distribution Fund.

### 7.6     *Wind-down Reserve.*

The activities and operations of the Liquidating Companies and the Plan Administrator (other than Distributions from the Claims Distribution Fund) shall be funded through a fund to be established on the Effective Date, in accordance with the terms of the Wind-down Budget, to fund the winding-down of the affairs of the Debtors and the Liquidating Companies and the other items reflected in the Wind-down Budget (the "**Wind-down Reserve**"). After the Effective Date, the Wind-down Reserve shall be supplemented with 100% of the Debtors' Cash and the net proceeds from the collection, sale, liquidation or other disposition of any non-Cash property, including the Causes of Action Recoveries, of the Debtors or the Liquidating Companies existing on or created after the Effective Date, to the extent such property has not otherwise been allocated pursuant to the terms of the Plan. Upon the closing of the Chapter 11

Cases and the dissolution of the Liquidating Companies, or such earlier time as it appears, in the reasonable view of the Plan Administrator, that the Wind-down Reserve is overfunded, all amounts remaining (or constituting excess funds) in the Wind-down Reserve, and otherwise in the Estates (other than in the Claims Distribution Fund), shall be transferred to the Claims Distribution Fund; provided, that if the amount to be transferred to the Claims Distribution Fund pursuant to this Section is less $25,000, the Plan Administrator may, at the conclusion of the Chapter 11 Cases, donate such amounts to a charity or charities designated by the Plan Administrator. In no event shall the Debtors' Cash and the net proceeds from the collection, sale, liquidation or other disposition of any non-Cash property, including the Causes of Action Recoveries, of the Debtors or the Liquidating Companies existing on or created after the Effective Date, be transferred to the Claims Distribution Fund if, notwithstanding the Wind-down Budget, insufficient assets remain in the Wind-down Reserve to fund the winding-down of the affairs of the Debtors and the Liquidating Companies and the other items reflected in the Wind-down Budget.

### 7.7    *Designation and Powers of Plan Administrator.*

(a) The Debtors shall designate the Plan Administrator, whose appointment shall be subject to the consent of the Creditors' Committee (which consent shall not be unreasonably withheld) and the approval of the Bankruptcy Court pursuant to the Confirmation Order. The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation (which compensation shall be negotiated by the Plan Administrator and the Debtors, with the consent, not to be unreasonably withheld, of the Creditors' Committee), shall be submitted to the Bankruptcy Court in connection with the Confirmation Hearing. In general, the Plan Administrator shall act for the Liquidating Companies in a fiduciary capacity as applicable to a board of directors, subject to the input of the Post-Confirmation Committee and the provisions of the Plan. The duties and powers of the Plan Administrator shall include the following, but in all cases shall be consistent with the terms of the Plan:

(1)    To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any officer, director, or shareholder of the Debtors or Liquidating Companies with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, or shareholders, including, without limitation, amendment of the certificates of incorporation and by-laws of the Liquidating Companies, merger of any Liquidating Company into another Liquidating Company and the dissolution of any Liquidating Company;

(2)    To maintain accounts, make Distributions and take other actions consistent with the Plan and the implementation hereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtors, the Liquidating Companies or the Plan Administrator,

even in the event of the dissolution of the Liquidating Companies;

(3)    Subject to the applicable provisions of the Plan, to collect and liquidate all assets of the Estates pursuant to the Plan and to administer the Wind-down of the affairs of the Debtors and the Liquidating Companies;

(4)    To object to any Claims (Disputed or otherwise) not allowed pursuant to the Plan or Final Order of the Bankruptcy Court, and to compromise or settle any Claims prior to objection without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan (including the first paragraph of this Section) or the Confirmation Order, and/or to seek Bankruptcy Court approval, as necessary, for any Claims settlements;

(5)    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Companies or the Plan Administrator and to pay, from the Wind-down Reserve, the fees and charges incurred by the Liquidating Companies on or after the Effective Date for fees of professionals, disbursements, expenses or related support services relating to the winding down of the Debtors and implementation of the Plan without application to the Bankruptcy Court, *provided*, *however*, that the Liquidating Companies, the Plan Administrator and the Debtors shall have no obligation to pay for professional fees, disbursements, expenses or any related support services incurred by the Creditors' Committee subsequent to its dissolution on the Effective Date;

(6)    To seek a determination of tax liability under section 505 of the Bankruptcy Code and to file tax returns and pay taxes, if any, related to the Debtors, the Liquidating Companies or the sale of non-Cash Assets of the Debtors or Liquidating Companies;

(7)    To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan;

(8)    To make all Distributions to holders of Allowed Claims provided for or contemplated by the Plan;

(9) To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court and as deemed appropriate by the Liquidating Companies or the Plan Administrator;

(10) To collect any accounts receivable or other claims of the Debtors, the Liquidating Companies or the Estates not released, transferred or otherwise disposed of pursuant to the Plan;

(11) To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the Liquidating Companies' obligations thereunder;

(12) To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of his or her choice, any assets of the Liquidating Companies if he or she concludes that they are of no benefit to the Estates or Liquidating Companies;

(13) To prosecute and/or settle all claims and/or Causes of Action held by the Debtors or Liquidating Companies (other than claims and Causes of Action released pursuant to the Plan or a Final Order) and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and litigate or settle such claims and/or Causes of Action on behalf of the Debtors or Liquidating Companies, and pursue to settlement or judgment such actions;

(14) To purchase or create and carry all insurance policies and pay all insurance premiums and costs he or she deems necessary or advisable;

(15) To implement and/or enforce all provisions of the Plan; and

(16) To collect and liquidate all assets of the Estates pursuant to the Plan and administer the Wind-down of the affairs of the Debtors and Liquidating Companies including, but not limited to, causing the dissolution of each Liquidating Company and closing the Chapter 11 Cases.

**7.8** *Resignation, Death or Removal of Plan Administrator.*

The Plan Administrator may resign at any time upon 30 days' written notice in accordance with and to the parties identified in Section 14.9 of the Plan. In the event of any such resignation, or the removal, death or incapacity of the Plan Administrator, the Bankruptcy Court may, upon motion of a party in interest, appoint a new Plan Administrator. No successor Plan

Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and deliver to the Bankruptcy Court, and the holders of General Unsecured Claims an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. Any resigning or removed Plan Administrator (or the executor or other representative of any deceased or incapacitated Plan Administrator) shall transfer, in exchange for consideration of one dollar ($1.00), all common stock of Value City owned by such Plan Administrator to the successor Plan Administrator.

### 7.9 *Liquidation of the Debtors.*

As soon as reasonably practicable after the Effective Date in accordance with the terms of the Plan and the Wind-down of the Debtors' affairs, each of the Debtors shall: (a) file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable laws of its state of incorporation; and (b) complete and file its final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. The filing by each Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of each such Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution. Upon the dissolution of the Liquidating Companies, the Plan Administrator shall assume any outstanding responsibility of the Liquidating Companies under the Plan.

### 7.10 *Creditors' Committee.*

As of the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, *provided*, *however*, that the Creditors' Committee shall exist, and its Professionals shall be retained and their fees and expenses paid by the Liquidating Companies or Plan Administrator, after such date with respect to (a) applications or motions filed pursuant to sections 328, 330 or 331 of the Bankruptcy Code, or pursuant to section 503(b) of the Bankruptcy Code for administrative expense claims on the grounds of "substantial contribution", whether prior applications or motions had been filed in the Chapter 11 Cases seeking related relief, including responding to any objections to such applications or motions, whether formal or informal, and attendance at any hearing with respect to the consideration of the applications or motions; and (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order. After the Effective Date, Professionals retained by the Creditors' Committee and the Debtors may be employed by the Plan Administrator.

# ARTICLE VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1** **_Initial Distribution Date._**

On the Effective Date or as soon thereafter as is reasonably practicable, after funding the Wind-down Reserve in accordance with Section 7.5, the Liquidating Companies shall make, or shall make adequate reserves for, the distributions required to be made under the Plan to holders of Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims.

(a) Establishment of Disputed Claims Reserves:

(1) On the Effective Date or as soon thereafter as is reasonably practicable, the Liquidating Companies shall establish a Disputed Reserve for Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims, which reserve shall be administered by the Liquidating Companies and the Plan Administrator. The Liquidating Companies shall reserve in Cash or other property, for distribution on account of each Disputed Administrative Expense, Priority Tax, Priority Non-Tax and Secured Claim (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order or (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtors, or (iii) if no Estimation Order has been entered with respect to such Claim, and no objection to such Claim is pending on the Effective Date, the greater of (A) the amount listed in the Debtors' Schedules and (B) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court or Claims Agent, as applicable. The Liquidating Companies, in their discretion, may increase the amount reserved as to any particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "**Disputed Priority Claims Reserve**" and the difference between (y) the amount so reserved for each such Claim and (z) the amount of federal, state and local taxes paid by the Liquidating Companies with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to.

(2) On the Initial Distribution Date, and after making all Distributions to holders of Allowed Claims (other than Allowed General Unsecured Claims) required to be made on

such date under the Plan and funding the Wind-down Reserve, the Holdback Amount Reserve, and the Disputed Priority Claims Reserve, the Liquidating Companies shall establish a separate reserve for Disputed General Unsecured Claims, which Disputed Claims Reserve shall be administered by the Plan Administrator in accordance with Section 8.4 of the Plan.

### 8.2    *Maintenance of Disputed Claims Reserves*.

To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account.  The property in each Disputed Claims Reserve shall be held in trust for the benefit of the holders of Claims in the relevant Classes that are ultimately Allowed.  Each Disputed Claims Reserve shall be closed and extinguished by the Liquidating Companies when all Distributions and other dispositions of Cash or other property required to be made hereunder from such reserves will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claims Reserve, all Cash (including any investment yield on the Cash) or other property held in that Disputed Claims Reserve shall revest in and become the property of the Liquidating Companies.  All funds or other property that vest or revest in the Liquidating Companies pursuant to this paragraph shall be (a) used to fund the Wind-Down Reserve as and to the extent set forth herein, and (b) thereafter transferred to the Claims Distribution Fund to be distributed to the holders of Allowed General Unsecured Claims in accordance with the terms of the Plan.  Except as expressly set forth in the Plan, neither the Debtors, the Liquidating Companies, nor the Plan Administrator shall have any duty to fund the Disputed Claims Reserves.

### 8.3    *Subsequent Distributions.*

Any Distribution that is not made on the Effective Date or the Initial Distribution Date (if the Initial Distribution Date is not the Effective Date) or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Companies in a Disputed Claims Reserve pursuant to Section 8.2 and distributed (in full, in the case of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims; and up to the relevant Holder's Pro-Rata Share in the case of Allowed General Unsecured Claims) on the first Subsequent Distribution Date after such Claim is Allowed or, with respect to Administrative Expenses, Priority Tax, Priority Non-Tax Claims, and Secured Claims at such earlier date as determined by the Liquidating Companies and the Plan Administrator.  No interest shall accrue or be paid on the unpaid amount of any distribution paid on a Subsequent Distribution Date in accordance with this Section 8.3.

### 8.4    *Claims Distribution Fund and Distributions to Holders of General Unsecured Claims.*

(a) **Funding of the Claims Distribution Fund.**  On or as of the Effective Date, a fund shall be created by the Liquidating Companies, for the benefit and payment of Allowed General Unsecured Claims (the "**Claims Distribution Fund**").  The Claims Distribution Fund shall be created as a segregated, interest-bearing account of the Liquidating

Companies, and the Debtors or Liquidating Companies shall deposit all Cash amounts in excess of the Holdback Amount Reserve, the Wind-Down Reserve, the Disputed Priority Claims Reserve and the amounts required to fund other payments required hereunder, into such fund. All Distributions to holders of Allowed General Unsecured Claims shall be made solely from the Claims Distribution Fund. The Debtors shall have no obligation to fund Distributions to holders of Allowed General Unsecured Claims beyond the funding of the Claims Distribution Fund as provided in this Section and other applicable provisions of the Plan. Funds in the Claims Distribution Fund shall be distributed to holders of Allowed General Unsecured Claims pursuant to the provisions of this Section 8.4. The Plan Administrator shall (i) issue detailed quarterly reports respecting the progress made in reconciling General Unsecured Claims and any Distributions or other payments made from the Claims Distribution Fund and (ii) maintain an accurate register (including based on information provided by the Debtors' claims agent) of General Unsecured Claims and the status of each.

(b) **Disputed General Unsecured Claims Reserve.** The Liquidating Companies shall set aside and reserve, from the funds in the Claims Distribution Fund, for the benefit of each holder of a Disputed General Unsecured Claim, an amount equal to the Claims Distribution Fund Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order or (ii) if no Estimation Order has been entered with respect to such Claim, the greater of (A) the amount listed in the Schedules and (B) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court or Claims Agent, as applicable, or pursuant to an order of the Bankruptcy Court entered in the Chapter 11 Cases. Such reserved amounts, collectively, shall constitute the "**Disputed General Unsecured Claims Reserve**" and the difference between (y) the amount so reserved for each such Claim and (z) the amount of federal, state and local taxes paid by the Liquidating Companies with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled from the Claims Distribution Fund. The balance of the funds in the Claims Distribution Fund shall be deemed to be "**Distributable Cash**."

(c) **Distributions to Holders of Allowed General Unsecured Claims.**

(1) Initial Distributions to Holders of Allowed General Unsecured Claims. As soon as reasonably practicable after the initial deadline for objecting to Claims, the Liquidating Companies shall distribute to each holder of an Allowed General Unsecured Claim such holder's Pro-Rata Share of Distributable Cash. The date of such Distributions shall be the "**Initial Fund Distribution Date**."

(2) Distributions on Disputed General Unsecured Claims. No Distributions shall be made from the Claims Distribution Fund with respect to a Disputed General Unsecured Claim until the resolution of such dispute by agreement with the Liquidating Companies or Final Order. On or as soon as reasonably practicable after the first Business Day of the next calendar

quarter (each such date a "**Periodic Fund Distribution Date**") after a Disputed General Unsecured Claim becomes an Allowed Claim, the Liquidating Companies shall distribute to the holder thereof Cash, from the applicable Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed General Unsecured Claim, in the amount in which it is ultimately allowed, on the Initial Fund Distribution Date and any previously occurring Periodic Fund Distribution Dates.  Any holder of a General Unsecured Claim whose Claim is so allowed after the tenth (10th) day prior to the next Periodic Fund Distribution Date shall receive its initial Distribution on the next succeeding Periodic Fund Distribution Date following such Periodic Fund Distribution Date.  Subsequent distributions to holders of such Claims shall be made in accordance with subsection (c)(4) of this Section.

(3)     Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed General Unsecured Claim shall be applied in accordance with Section 8.2 hereof.

(4)     Periodic Distributions to Holders of General Unsecured Claims.  After the Initial Fund Distribution Date, additional Cash shall be deposited in the Claims Distribution Fund or become Distributable Cash from:  (A) the proceeds from the liquidations of the Debtors' remaining assets, (B) the Causes of Action Recoveries; (C) as described in subsection (b) of this Section, amounts previously reserved for certain Disputed Claims and not paid in connection with the resolution of such Claims; and (D) pursuant to Section 8.9(b) hereof, certain Unclaimed Property.  On each Periodic Fund Distribution Date, the Liquidating Companies shall distribute to each holder of an Allowed General Unsecured Claim each such holder's Pro-Rata Share of the Distributable Cash remaining on such date.  Periodic Fund Distribution Dates shall continue to occur until (Y) all Disputed General Unsecured Claims have been resolved; and (Z) all Unclaimed Property or other assets required to become Distributable Cash pursuant to Section 8.9(b) or other applicable provisions hereof shall have become Distributable Cash.

(5)     Final Distributions to Holders of Distribution Fund Claims.  On the first Business Day that is ten (10) days after the date on which all of the events described in clauses (Y) and (Z) of

subsection 8.4(c)(4) hereof shall have occurred, or such later date as is reasonably practicable, the Liquidating Companies shall distribute (each such Distribution, a "**Final Fund Distribution**") to each holder of an Allowed General Unsecured Claim such holder's Pro-Rata Share of the remaining Distributable Cash.

(6)  Minimum Distributions to Holders of Allowed General Unsecured Claims.  Notwithstanding anything to the contrary herein, no Distribution, other than a Final Fund Distribution, shall be made from the Claims Distribution Fund to any holder of an Allowed General Unsecured Claim, unless the amount of such Distribution is not less than fifty dollars ($50), and no Distributions to holders of Allowed General Unsecured Claims shall be made on any Periodic Fund Distribution Date if the aggregate Distributions to be made from the Claims Distribution Fund on such date would not exceed $100,000. Notwithstanding anything to the contrary herein, if the aggregate amount of Final Fund Distributions to be made to holders of Allowed General Unsecured Claims does not exceed $5,000, such aggregate amount shall not be distributed to such holders but shall instead be transferred to the Wind-down Reserve or contributed by the Liquidating Companies, in lump sum, to a charity designated by the Liquidating Companies.

**8.5**     *Investments by the Liquidating Companies.*

All Cash held by the Liquidating Companies, including cash held pursuant to Section 8.9, shall be invested in accordance with section 345 of the Bankruptcy Code, or as otherwise permitted by a Final Order of the Bankruptcy Court during the Chapter 11 Cases and as deemed appropriate by the Plan Administrator.  The earnings on such investments shall be retained for the benefit of the Liquidating Companies and deposited in the Wind-down Reserve.

**8.6**     *Delivery of Distributions.*

(a)  Undeliverable Distributions.

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Companies or by the Plan Administrator, as the case may be, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of claim is filed or if the Debtors, the Liquidating Companies, or the Plan Administrator have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Companies and/or the Plan Administrator may, in their discretion, but are not obligated to, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Liquidating Companies and/or the Plan Administrator deem appropriate, but no Distribution

to any holder shall be made unless and until the Plan Administrator and/or the Liquidating Companies have determined the then-current address of the holder of such Allowed Claims, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Liquidating Companies or the Plan Administrator shall be returned to, and held in trust by, the Liquidating Companies or the Plan Administrator, until the Distributions are claimed or are deemed to be Unclaimed Property upon the expiration of one year from the return of the undeliverable Distribution, as set forth below in Section 8.9. The Liquidating Companies or the Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided*, *however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Plan Administrator Agreement.

### 8.7    *Record Date for Distributions.*

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Liquidating Companies and the Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Liquidating Companies and the Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the date of the entry of the Confirmation Order and upon such other evidence or record of transfer or assignment that are known to the Liquidating Companies as of the date of the entry of the Confirmation Order.

### 8.8    *Distributions to Holders of Claims—Generally.*

(a) **Distributions on Account of Allowed Claims Only.** Except to the extent provided in Section 9.2 hereof, Disputed Claims and Interests shall not be entitled to any Distribution until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

(b) **Method of Cash Distributions.** Any Cash payment to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c) **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d) **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(e) **Interest on Claims.** Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be

entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

(f) **Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidating Companies may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(g) **Withholding Taxes.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. The Liquidating Companies or the Plan Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Companies or the Plan Administrator to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property in accordance with Section 8.9 herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

(h) **Time Bar to Cash Payments by Check.** Checks issued by the Liquidating Companies or the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Section 8.8(h) may be made directly to the Liquidating Companies by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check must be made in writing on or before the later of the first anniversary of the Effective Date and the six (6) month anniversary of the date on which the Distribution was made. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Section 8.9(b) herein.

(i) **No Payments of Fractional Dollars.** Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

(j) **Setoff and Recoupment.** The Liquidating Companies or the Plan Administrator may, but shall not be required to, setoff against, or recoup from, any Claim and the

Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates, the Liquidating Companies or the Plan Administrator may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, the Liquidating Companies or the Plan Administrator of any right of setoff, recoupment claims, rights or Causes of Action (excluding those Causes of Action released pursuant to Article XII herein) that the Debtors, the Estates, the Liquidating Companies or the Plan Administrator or any of their successors may possess against such holder.

### 8.9      *Unclaimed Property.*

(a) **Escrow of Unclaimed Property.**  Subject to Section 8.9(b) hereof, the Liquidating Companies shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.

(b) **Distribution of Unclaimed Property.**  At the end of one year following the relevant Distribution date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims theretofore entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, whereupon (i) all right, title and interest in and to such property shall immediately and irrevocably revest in the Liquidating Companies, for deposit in (A) the Claims Distribution Fund, in the case of Unclaimed Property related to Allowed General Unsecured Claims, or (B) the Wind-down Reserve, in the case of all other Unclaimed Property, (ii) such holders shall cease to be entitled thereto and (iii) any such Unclaimed Property that is Cash (including Cash interest, maturities, dividends and the like) shall be property of the Liquidating Companies, free of any restrictions thereon other than any restriction imposed under the Plan.

## ARTICLE IX.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

### 9.1      *Objections to Claims.*

Other than with respect to Fee Claims, only the Liquidating Companies shall be entitled to object to Claims after the Effective Date.  Any objections to Claims (other than Fee Claims), which Claims have been filed on or before the later of the Confirmation Date and the applicable Bar Date, if any, shall be served and filed on or before the later of:  (a) one hundred and twenty (120) days after the Effective Date or such applicable Bar Date if such applicable Bar Date is after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) of this Section.  Any Claims filed after the applicable Bar Date shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Companies unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the

Liquidating Companies effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by (i) first class mail, postage prepaid, or (ii) if available, electronic mail, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Liquidating Companies may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

### 9.2 *Estimation of Disputed Claims and Interests.*

The Liquidating Companies or a holder of a Claim may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim regardless of whether any Liquidating Companies have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Companies may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.

### 9.3 *Insurance Preservation and Proceeds.*

Except with regard to claims against the Released Parties that are released hereunder, nothing in the Plan shall diminish or impair the enforceability of any Insurance Policy that may cover Claims against the Debtors or any related Person. Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy (including Insurance Claims) shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery or assist the Debtors or the Liquidating Companies in seeking recovery under such policies with regard to such Claims.

### 9.4 *Amendments to Claims.*

After the later of the Confirmation Date or the applicable Bar Date, if later, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the amount or priority of such Claim. Unless otherwise provided herein, any new or amended Claim filed after the later of the Confirmation Date or such applicable Bar Date, if any, shall be deemed disallowed in full and expunged without any action by the Debtors or the Liquidating Companies, unless the Claim holder has obtained prior Bankruptcy Court authorization for the filing.

**9.5** **_No Recourse to Liquidating Companies or Plan Administrator._**

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient Cash in the Claims Distribution Fund or otherwise, to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no Claim holder shall have recourse to the Debtors, the Liquidating Companies, the Plan Administrator, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective property. THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

# ARTICLE X.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1** **_Rejection of Executory Contracts and Unexpired Leases._**

(a) The Plan shall constitute a motion to reject all executory contracts and unexpired leases except with respect to: (i) those executory contracts or unexpired leases set forth on Schedule 10.1 hereto; (ii) any executory contracts and unexpired leases that are or were the subject of separate motions to assume or reject filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of the Confirmation Order; (iii) all executory contracts or unexpired leases assumed under the Plan or by order of the Bankruptcy Court entered before the Confirmation Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; and (iv) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code, which agreements shall be subject to assumption or rejection within thirty (30) days of any such determination; _provided_, that any executory contract or unexpired lease listed on Schedule 10.1 or otherwise to be assumed hereunder that is the subject of a Cure Dispute pursuant to Section 10.4 herein may be rejected upon a motion, made by the Debtors or the Liquidating Companies, as the case may be, to reject such contract or lease based upon the existence of such dispute filed at any time. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

(b) The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Section 10.1(a) (and assumption and assignment of the executory contracts or unexpired leases included on Schedule 10.1) pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection (or assumption and assignment, as applicable) thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases. For the avoidance of doubt, all compensation and benefits programs, shall be treated as executory contracts under the Plan and deemed rejected on

the Effective Date. Any executory contract or unexpired lease listed on Schedule 10.1 hereto shall be deemed assumed and assigned to the Liquidating Companies, and the Debtors shall have no further liability thereunder.

### 10.2 *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Section 10.1 of the Plan must be filed with the Bankruptcy Court and served on the Liquidating Companies no later than thirty (30) days after the Effective Date and shall be treated as Rejection Claims. Any Rejection Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section 10.1 for which proofs of Claim are not filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Section 12.6.

### 10.3 *Completion of Non-Assignable Contract.*

If the Bankruptcy Court, or another court of competent jurisdiction, determines that a contract listed on Schedule 10.1 hereto is unable to be assumed and/or assumed and assigned pursuant to section 365 of the Bankruptcy Code (a "**Non-Assignable Contract**"), then the Plan shall not constitute any Debtor's agreement to assign such Non-Assignable Contract if such attempted assignment would be unlawful. Notwithstanding any provision herein to the contrary, on the Effective Date, the Debtors shall retain all rights to the Non-Assignable Contracts and may use their reasonable best efforts to obtain any consent, approval or amendment, if any, required to novate, assume and/or assume and assign any Non-Assignable Contract.

### 10.4 *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(a) Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 10.1 of the Plan, any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount (the "**Cure Amount**") in Cash within thirty (30) days after the Effective Date or on such other less favorable terms to the non-Debtor party as the parties to such executory contracts or unexpired leases may otherwise agree.

(b) No later than five (5) days prior to the commencement of the Confirmation Hearing, the Debtors shall file a schedule (the "**Cure Schedule**") setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed pursuant to Section 10.1 of the Plan. Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within twenty (20) days after the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any claim against the Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c) In the event of a dispute (each, a "**Cure Dispute**") regarding:  (i) the Cure Amount; (ii) the ability of the applicable Debtor or the Liquidating Companies to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the Cure Dispute and approving the assumption.  To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the subject contract prior to resolution of the Cure Dispute provided that the Debtors reserve Cash in an amount sufficient to pay the full amount asserted by the non-Debtor party to the subject contract (or such other amount as may be fixed or estimated by the Bankruptcy Court).

**10.5**     *Indemnification of Directors, Officers and Employees.*

For purposes of the Plan, the obligation of a Debtor to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, officer or employee of the Debtors or any other corporation or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor, in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date, remain unaffected thereby, become an obligation of the Liquidating Companies, and not be discharged, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**11.1**     *Conditions to Confirmation.*

The Plan may not be confirmed unless the conditions set forth in this Section are satisfied.  Except as provided in Section 11.3(a) below, one or more of the following conditions may be waived at any time by the Debtors with the consent of the Creditors' Committee (which consent shall not unreasonably be withheld):

(a) The Disclosure Statement Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, shall have been entered by the Bankruptcy Court; and

(b) The Wind-Down Budget shall be completed.

**11.2**     *Conditions to Consummation.*

The Plan may not be consummated unless each of the conditions set forth in this Section is satisfied.  Except as provided in Section 11.3(b) below, any one or more of the following conditions may be waived at any time by the Debtors with the consent of the Creditors' Committee (which consent shall not unreasonably be withheld):

(a) The Confirmation Order, in form and substance reasonably acceptable to the Debtors and the Creditors' Committee, shall have been entered by the Bankruptcy Court and shall be a Final Order;

(b) The certificates of incorporation and by-laws of the Liquidating Companies shall have been amended or created as provided in the Plan; and

(c) The Debtors shall have sufficient Cash on hand to pay, in full, all Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims, and fund the Wind-down Reserve, the Holdback Amount Reserve and the Disputed Priority Claims Reserve.

### 11.3 *Waiver of Conditions Precedent.*

(a) The Debtors, with the reasonable consent of the Creditors' Committee, shall have the right to waive one or more of the conditions precedent set forth in Sections 11.1 of the Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan.

(b) The Debtors with the reasonable consent of the Creditors' Committee, shall have the right to waive one or more of the conditions precedent set forth in Sections 11.2 of the Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan. If any condition precedent to the Effective Date is waived pursuant to this Section 11.3(b) and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of the Plan shall foreclose any ability to challenge the Plan in any court. Unless otherwise provided herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### 11.4 *Effect of Nonoccurrence of the Conditions to Consummation.*

If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before the date that is 180 days after the Confirmation Date, or by such later date as determined by the Debtors with the reasonable consent of the Creditors' Committee, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; or (b) prejudice in any manner the rights of the Debtors.

# ARTICLE XII.

## EXCULPATION, INJUNCTION AND RELATED PROVISIONS
## EFFECT OF CONFIRMATION

### 12.1     *Binding Effect.*

This Plan shall be binding and inure to the benefit of the Debtors, the Liquidating Companies, the Plan Administrator, the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns.

### 12.2     *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estates shall vest in the Liquidating Companies, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Confirmation Order including with respect to the rights to receive any Distribution hereunder.

### 12.3     *Release of Claims Against and Interests in the Debtors.*

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined from prosecuting or asserting any such waived, released, and discharged Claim against or terminated Interest in the Debtors. Nothing in this Section shall preclude any holder of an Allowed Claim or Interest from receiving the applicable Distribution provided for under the Plan.

### 12.4     *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.5     *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**12.6**     *Injunction.*

(a) *Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Companies, the Plan Administrator, the Released Parties, the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Liquidating Companies, the Plan Administrator, the Released Parties or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Companies, the Plan Administrator, the Released Parties or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.*

(b) *Each holder of an Allowed Claim or Allowed Interest shall be deemed to have specifically consented to the injunctions set forth herein.*

**12.7**     *Releases.*

(a) *Releases by the Debtors.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, each Debtor and debtor in possession, and any person seeking to exercise the rights of the Debtors' estates, including without limitation, any successor to the Debtors, including the Liquidating Companies, the Plan Administrator, or any representative of the Debtors' estates appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release, waive and discharge all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action (including, but not limited to, the Causes of Action) and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence from the Petition Date through and including*

the Effective Date in any way relating to the Debtors, the parties released pursuant to this Section 12.7(a), the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates, whether directly, indirectly, derivatively or in any representative or any other capacity, against any Released Party; *provided*, *however*, that in no event shall anything in this Section 12.7(a) be construed as a release of any Person's fraud or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors and/or their Affiliates.

(b) *Releases by Holders of Claims and Interests*. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) that has held, holds or may hold a Claim or Interest, as applicable, in consideration for the obligations of the Debtors under the Plan, the Plan Distributions and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, will be deemed to have consented to the Plan and the restructuring embodied herein for all purposes and deemed to forever release, waive and discharge all claims (as such term is defined in section 101(5) of the Bankruptcy Code), including but not limited to any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including, without limitation, any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Chapter 11 Cases or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence from the Petition Date through and including the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement against any Debtor, Liquidating Company, Released Party or the Plan Administrator; *provided*, *however*, that in no event shall anything in this Section 12.7(b) be construed as a release of any Person's fraud or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors and/or their Affiliates. Notwithstanding anything to the contrary contained in this Plan, the releases provided for in this section 12.7(b) of the Plan shall not: (i) release any non-Debtor from any liability to the United States Government or any of its agencies (including, without limitation, the Pension Benefit Guaranty Corporation) or any state or local authority arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the Employee Retirement Income Security Act of 1974, as amended, (c) any criminal laws of the United States or any state, city or municipality, (d) environmental law, or (e) federal securities laws of the United States; or (ii) enjoin or preclude the United States Government or any of its agencies (including, without limitation, the Pension Benefit Guaranty Corporation) or any state or local authority from enforcing such liability.

### 12.8    *Exculpation and Limitation of Liability.*

*None of the Debtors, the Liquidating Companies, the Plan Administrator or the Released Parties shall have or incur any liability to any holder of any Claim or Interest for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation the negotiation and execution of the Plan, the Chapter 11 Cases, the Disclosure Statement, the solicitation of votes for and the pursuit of the Plan (including that solicitation of acceptances of the Plan was not conducted in good faith nor in compliance with the applicable provisions of the Bankruptcy Code), the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court. The Debtors, the Liquidating Companies, the Plan Administrator and the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases and the Plan.*

### 12.9    *Injunction Related to Releases and Exculpation.*

*The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Article XII of the Plan.*

### 12.10    *Retention of Causes of Action/Reservation of Rights.*

(a) Except with respect to the Released Parties or any other beneficiary of the releases, injunctions, and exculpations contained in this Article XII, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims or causes of action (including without limitation, the Causes of Action) that the Debtors, the Liquidating Companies, or the Plan Administrator may have or may choose to assert on behalf of the Estates or themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation:  (i) any and all claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives; (ii) the turnover of any property of the Estates; and/or (iii) claims against other third parties.

(b) Except with respect to the Released Parties or any other beneficiary of the releases, injunctions, and exculpations contained in this Article XII, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against the holder of, or with respect to, any Claim. The Debtors and the Liquidating Companies shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not

been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 12.11 *Vesting of Causes of Action.*

(a) Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all claims and Causes of Action (excluding those Causes of Action released pursuant to this Article XII) that the Debtors' Estates may hold against any Person, together with proceeds of the foregoing, if any, shall vest in the Liquidating Companies and are preserved for the benefit of the holders of Allowed General Unsecured Claims.

(b) Except as otherwise provided in the Plan, Confirmation Order or the Plan Administrator Agreement, after the Effective Date, the Liquidating Companies and the Plan Administrator shall have the exclusive right to institute, prosecute, abandon, settle, or compromise all Causes of Action (excluding those Causes of Action released pursuant to this Article XII), in their sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases; *provided*, *however*, no Cause of Action of $1,000,000 or more shall be settled or compromised by the Plan Administrator without Bankruptcy Court approval.

### 12.12 *Releases of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, in consideration for the Distributions granted hereunder, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors, the Liquidating Companies and the Plan Administrator. On the Effective Date, the holder of each such mortgage, deed of trust, lien, pledge or other security interest against property of the Estates shall be deemed to have appointed the Debtors, the Liquidating Companies and the Plan Administrator, each as agent to such holder for the purpose of filing and recording all releases and discharges with respect to each such mortgage, deed of trust, lien, pledge or other security interest held against property of the Estates.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

**13.1.** On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a) To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c) To ensure that distributions to holders of Allowed Claims or Allowed Interests are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h) To hear and determine all Fee Claims;

(i) Resolve disputes concerning any reserves with respect to Disputed Claims, Cure Disputes, or the administration thereof;

(j) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k) To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate the Plan, to construe, enforce, implement, or execute any release or injunction set forth herein, in any action or proceeding, whether in connection with any Debtor, Liquidating Company, Released Party, the Plan Administrator, or any holder of a Claim or Interest, or to maintain the integrity of the Plan following consummation;

(l) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o) Resolve any disputes concerning whether a Person or entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement Hearing, the Confirmation Hearing, any applicable Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(p) To recover all Assets of the Debtors and property of the Estates, wherever located; and

(q) To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1 *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by applicable law, any transfer or encumbrance of assets or any portion(s) of assets pursuant to, or in furtherance of, or in connection with the Plan shall constitute a "transfer under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes.

### 14.2 *Termination of Professional Engagements.*

On the Effective Date, the engagement of each Professional retained by the Debtors and the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; *provided*, *however*, that the Creditors' Committee Professionals shall continue to be retained for the purposes set forth in Section 7.9 hereof; *provided*, *further*, *however*, any Professional may be retained by the Liquidating Companies or the Plan Administrator.

### 14.3 *Amendments.*

(a) **Plan Modifications.** This Plan may be amended, modified, or supplemented by the Debtors, in the manner provided for by section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Interests pursuant to the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b) **Other Amendments.** Prior to the Effective Date the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval

of the Bankruptcy Court, *provided*, *however*, that, such technical adjustments and modifications do not materially adversely affect the treatment of holders of Claims or Interests.

### 14.4    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void.

### 14.5    *Confirmation Order.*

The Confirmation Order shall, and is hereby deemed to, ratify all transactions affected by the Debtors during the period commencing on the Petition Date and ending on the Confirmation Date, except for any acts constituting willful misconduct or fraud.

### 14.6    *Severability.*

If, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.7    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any supplements or exhibits to the Plan provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.8    *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 14.9    *Notices.*

In order to be effective, all notices, requests, and demands to or upon the Debtors or Liquidating Companies shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually

delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Debtors:**
Value City Holdings, Inc., et al.
c/o Mesirow Financial
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
Attn:   James Feltman, President
Telephone:  (212) 880-3900
Facsimile:  (212) 661-0545

Value City Holdings, Inc., et al.
c/o Clingman & Hanger Management Associates, LLC
11038 Lakeridge Parkway, Suite 4
Ashland, VA 23005
Attn:   W. Edward Clingman, Jr., Chief Wind-down Officer
Telephone:  (804) 550-7911 ext. 107
Facsimile:  (804) 550-7915

-and-

**To Counsel for the Debtors:**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019-6099
Attn:   John C. Longmire, Esq.
Telephone:  (212) 728 8000
Facsimile:  (212) 728 8111

**To Counsel for Creditors' Committee:**
Otterbourg, Steindler Houston & Rosen, P.C.
230 Park Avenue
New York, New York 10169
Attn:   David Posner, Esq.
Telephone:  (212) 905-3682
Facsimile: (212) 747-5977

- and -

SilvermanAcampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn:   Adam L. Rosen, Esq.
Telephone:  (516) 479-6300
Facsimile:  (516) 479-6301

**14.10** *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Interests prior to the Effective Date.

Dated: March 18, 2010
      New York, New York

                Respectfully submitted,

                VALUE CITY HOLDINGS, INC.

By: /s/ W. Edward Clingman Jr.
     W. Edward Clingman, Jr.
     Chief Wind-Down Officer

VALUE CITY DEPARTMENT STORES, LLC

By: /s/ W. Edward Clingman Jr.
     W. Edward Clingman, Jr.
     Chief Wind-Down Officer

VALUE CITY DEPARTMENT STORES
SERVICES, INC.

By: /s/ W. Edward Clingman Jr.
     W. Edward Clingman, Jr.
     Chief Wind-Down Officer

VALUE CITY OF MICHIGAN, INC.

By: /s/ W. Edward Clingman Jr.
     W. Edward Clingman, Jr.
     Chief Wind-Down Officer

GRAMEX RETAIL STORES, INC.

By: /s/ W. Edward Clingman Jr.
     W. Edward Clingman, Jr.
     Chief Wind-Down Officer

GB RETAILERS, INC.

By: /s/ W. Edward Clingman Jr.
    W. Edward Clingman, Jr.
    Chief Wind-Down Officer


J.S. OVERLAND DELIVERY, INC.

By: /s/ W. Edward Clingman Jr.
    W. Edward Clingman, Jr.
    Chief Wind-Down Officer


RETAIL VENTURES JEWELRY, INC.

By: /s/ W. Edward Clingman Jr.
    W. Edward Clingman, Jr.
    Chief Wind-Down Officer


VCHI ACQUISITION CO.

By: /s/ W. Edward Clingman Jr.
    W. Edward Clingman, Jr.
    Chief Wind-Down Officer


Counsel:

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
(212) 728-8000
*Attorneys for the Debtors and*
*Debtors in Possession*

## EXHIBIT A TO PLAN

## List of Debtors

**Debtors**

Value City Holdings, Inc.

Value City Department Stores LLC

Value City Department Stores Services, Inc.

Value City of Michigan, Inc.

Gramex Retail Stores, Inc.

GB Retailers, Inc.

J.S. Overland Delivery, Inc.

Retail Ventures Jewelry, Inc.

VCHI Acquisition Co.

## EXHIBIT B TO PLAN

**Certificates of Incorporation and By-Laws of Liquidating Companies**

**[TO BE FILED]**

## SCHEDULES TO PLAN

**[TO BE FILED]**