| UNITED STATES BANKRUPTCY COURT | Hearing Date: September 1, 2010 |
| SOUTHERN DISTRICT OF NEW YORK | Hearing Time: 10:00 a.m. |

---------------------------------------------------------- x
In re : Case No. 08-14197 (JMP)
 :
VALUE CITY HOLDINGS, INC., et al., : Chapter 11
 :
 : (Jointly Administered)
Debtors. :
---------------------------------------------------------- x

**OBJECTION AND RESPONSE OF THE UNITED STATES
TRUSTEE TO FINAL FEE APPLICATIONS**

**TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE**:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection and response (the "Objection") to the final fee applications of the professionals in connection with the Chapter 11 cases of Value City Holdings, Inc., et al. (the "Debtors") listed on the chart attached as Exhibit A. **The professionals seek a total of $7,051,938.88 in fees and $226,745.81 in expenses.** In support of her Objection, the United States Trustee alleges as follows:

**I. SUMMARY OF OBJECTION**

The Debtors were able to successfully and swiftly liquidate and pay off the Debtors' pre-petition secured creditors. Since paying the secured creditors, the Debtors have confirmed a plan pursuant to which unsecured creditors will receive a very small distribution, but only to the extent the Debtors are able to successfully litigate certain preference actions. However, at this juncture, unsecured creditors have received no distribution.

In other cases, when the efforts of professionals primarily benefit secured creditors, the professionals are generally able to wrest an agreement from the secured creditors that some portion of the proceeds recovered will be carved out and used to repay the costs of the professionals and provide for at least some distribution to unsecured creditors. This was not done in this case. The payment of an aggregate of over $7 million to professionals, with a proposed minimal distribution (.6%) to general unsecured creditors, is not reasonable. The

United States Trustee recommends that the fees sought by each professional be reduced by 10%. In the alternative, if the Court should find that 100% of the fees sought by these professionals is reasonable, then until such time as some distribution is made to the general unsecured creditors, the United States Trustee recommends that a holdback of 10% be imposed.

With respect to the specific fee applications, as noted below and in accordance with the local rules of this Court and the United States Trustee Guidelines, no fees should be awarded for time entries that are vague or that contain impermissible lumping. This issue is particularly troublesome here where the vague time entries prevented the United States Trustee from adequately reviewing certain time entries in order to ensure that there had been no duplication of efforts between committee counsel and its conflict counsel -- a potential issue noted by the Court during the course of these proceedings. Additionally, certain professionals failed to articulate the reason why travel expenses were requested and appeared to take meal expenses without articulating why such expenses were warranted or required. Accordingly, those requests for expenses and fees that were identified below should not be awarded unless and until each applicant supplements the objectionable request in order to explain why those fees and expenses are appropriate and in accordance with the local rules of this Court and the United States Trustee Guidelines.

## II. FACTS

**A.    General**

1.    On October 26, 2008 (the "Filing Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and orders for relief were simultaneously entered therewith. On November 3, 2008, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

2.    Prior to the Filing Date, the Debtors operated a full-line, value price retailer carrying men's, women's and children's apparel, accessories, jewelry, shoes, home fashions,

electronics and seasonal items.  See amended disclosure statement filed on March 23, 2010 (the "Amended Disclosure Statement") (ECF # 1057) at 9.

3. The predecessor to the Debtors first opened its doors in 1917.  Id. at 9. Eventually, on January 23, 2008, Crystal Value, LLC and Emerald Capital Management LLC, among others, acquired an interest in Debtors (the "2008 Acquisition").  Id.  For the seven months ending August 31, 2008, the Debtors recorded net sales of approximately $288,542,992 and incurred net losses of $70,041,247.  Id. at 10.

4. On or about January 23, 2008, at the time of the 2008 Acquisition, certain of the Debtors entered into a credit and security agreement with National City Business Credit, Inc. as collateral agent, among other banks (collectively, the "Prepetition Lenders").  Id. at 14.  As of the Filing Date, the Debtors owed approximately $26 million under the prepetition revolver and approximately $10.5 million in pre-petition letters of credit to the Prepetition Lenders.  Id.

**B.    The Going Out Of Business Sale**

5. On October 27, 2008, the Debtors filed a motion for an order authorizing the Debtors to conduct going out of business sales (the "GOB Sales") and other relief (the "GOB Motion") (ECF # 17).  In the GOB Motion, the Debtors sought to assume three pre-petition contracts with Tiger Capital Group, LLC ("Tiger") to conduct the GOB Sales at all of the Debtors' stores.  Id. at ¶ 19.  The GOB Motion provided for the sales to conclude no later than December 31, 2008.  Id. at ¶ 29(a).

6. On November 20, 2008, the Court entered an order approving the GOB Motion (the "GOB Order") (ECF # 158).  As of December 1, 2008, the Debtors had satisfied their obligations to their Prepetition Lenders.  See Amended Disclosure Statement (ECF # 1057) at 26-27.

**C.     The Retention of Professionals**

7.     The Debtors filed retention applications for certain professionals to represent and assist them in the administration of the Chapter 11 Cases as follows:

(a) <u>Willkie Farr & Gallagher LLP</u>.  The Debtors, on October 27, 2008, filed with the Bankruptcy Court an application (ECF # 5) seeking entry of an order authorizing the Debtors to retain Willkie Farr & Gallagher LLP ("WF&G") as their counsel.  On November 19, 2008, the Bankruptcy Court entered an order (ECF # 155) approving the application.

(b) <u>Verdolino & Lowey, P.C.</u> On November 19, 2008, the Debtors filed with the Bankruptcy Court an application (ECF # 157) seeking authority to retain Verdolino & Lowey, P.C. ("V&L") as tax and financial Services consultants.  On December 5, 2009, the Bankruptcy Court entered an order (ECF # 236) granting the application.

(c) <u>Hilco Real Estate, LLC.</u>  On November 25, 2008, the Debtors filed with the Bankruptcy Court an application (ECF # 194), seeking authority to employ Hilco Real Estate, LLC ("Hilco") as real estate consultants.  On December 11, 2008, the Bankruptcy Court entered an order (ECF # 259) granting the application.

(d) <u>Clingman & Hanger Management Associates, LLC.</u> On February 13, 2009, the Debtors filed with the Bankruptcy Court an application (ECF # 460), seeking authority to retain W. Edward Clingman, Jr., as the Debtors' Chief Wind-Down Officer ("CWO") and Clingman & Hanger Management Associates, LLC ("C&H"), to provide personnel necessary to assist the CWO in managing the wind-down of the Debtors' businesses (together with the CWO, the "C&H Personnel"). On March 5, 2009, the Bankruptcy Court entered an order (ECF # 500) granting the application.

(e) <u>Storch Amini & Munves PC</u>.  On June 30, 2009, the Debtors filed with the Bankruptcy Court an application (ECF # 678), seeking authority to retain Storch Amini & Munves PC ("SAM") as special litigation counsel to investigate, pursue and prosecute certain preferential transfers, in accordance with sections 547 and 550 of the Bankruptcy Court. On August 12, 2009, the Bankruptcy Court entered an order (ECF # 728) granting the application.

8.     The Committee also retained professionals.  By order dated December 11, 2008, the Court approved the retention of Otterbourg, Steindler, Houston & Rosen, P.C. ("OSH&R") (the "OSH&R Retention Order") (ECF # 260), subject to the admonition "that, notwithstanding anything to the contrary herein, OSH&R shall not render any services in connection with any inquiry or investigation into or in connection with any prepetition transactions between and among the Debtors, the prepetition lenders including Wells Fargo Retail Finance, LLC, Tiger Capital Group, LLC, and/or the Debtors['] equity owners, members, directors or the principals thereof without prejudice to any rights the United States Trustee may have . . . ."  <u>Id.</u>

4

SilvermanAcampora, LLP ("SA") was retained as conflicts counsel for the Committee. (ECF # 241).

**The Plan Process**

9. The Amended Disclosure Statement revealed that unsecured creditors have aggregate claims in the amount of $133 million. See Amended Disclosure Statement at 8. Attached to the Amended Disclosure Statement as Exhibit B is a liquidation analysis (the "Amended Liquidation Analysis"). The Amended Liquidation Analysis showed that the Debtors expected to have $12,880,642 in assets available for distribution, including $2,265,000 in cash from "Proceeds from Vendor Avoidance Actions." See Amended Liquidation Analysis. The Amended Liquidation Analysis also showed that estimated cash for unsecured creditors would total $795,029. Id. A copy of the Amended Liquidation Analysis (attachment to ECF # 1057) is attached hereto as Exhibit B.

10. As stated in the Amended Disclosure Statement, the Committee "took primary responsibility for investigating possible claims against various parties with contractual and other relationships with the Debtors" including parties involved in the 2008 Acquisition. Id. at 37. Alan Cohen was a director of the Debtors and also principal of Emerald Capital Management LLC, an equity holder of one of the Debtors. Id. at n. 5. Mr. Cohen is also the principal of Tiger, which firm the Debtors chose to liquidate their assets in the year leading up to the Filing Date, and also to conduct GOB Sales. Id. As disclosed in the Amended Disclosure Statement, the Committee declined to pursue any causes of action against Mr. Cohen or any insiders. Id. at 38.

11. In support of confirmation, the Debtors submitted the affidavit of W. Edward Clingman, Jr. dated May 10, 2010 (the "Clingman Affidavit") (ECF # 1114). In the Clingman Affidavit, Mr. Clingman stated that unsecured creditors would do better under a plan than in a Chapter 7 liquidation. Specifically, "[t]he holders of Allowed General Unsecured Claims, which would be otherwise entitled to a .1% recovery in a chapter 7 liquidation, are estimated to receive a recovery of .6% on account of their respective Allowed General Unsecured Claims under the

Plan." See Clingman Affidavit at ¶ 38. A copy of the Clingman Affidavit is attached as Exhibit C.[1]

12. By order dated May 17, 2010, the Court confirmed the Plan (ECF # 1121). On July 23, 2010, the Debtors filed a post-confirmation report (the "Post Confirmation Report") (ECF # 1187). The Post-Confirmation Report documented that $1,957,209.38 has been disbursed to holders of allowed administrative and priority claims and that certain wage claims were being resolved. A copy of the Post-Confirmation Report is attached as Exhibit D. In the July 2010 monthly operating report filed on August 20, 2010 (the "July MOR") (ECF # 1207), the Debtors reported that they had not yet made disbursements to unsecured creditors (Class Two). They reported total receipts of only $24,296.22 for that month. See July MOR at Chapter 11 Post-Confirmation Schedule of Receipts and Disbursements. A copy of the July MOR is attached as Exhibit E.

### III. ARGUMENT

**A.    General Standards**

13. Section 330 of the Bankruptcy Code provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103-

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

---

[1]The United States Trustee had filed an objection to a prior draft of the disclosure statement (the "United States Trustee Objection") (ECF # 1042). The United States Trustee required further disclosure from the Debtors about how they expected to pay unsecured creditors. "Specifically, it appears that the Debtors must recover $2.5 million from avoidance actions to fund distributions to unsecured creditors and fully fund priority claimants, but upon information and belief, the Debtors have only collected approximately $1 million. The Disclosure Statement must provide further information on how the Debtors expect to collect $2.5 million from vendor avoidance actions and file a feasible Plan." Id. at 1. The Clingman Affidavit and the Amended Liquidation Analysis were filed, in part, to address United States Trustee concerns.

1. **Burden of Proof**

14. Each professional applying for compensation bears the burden with respect to the review of fees and expenses. In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D.Vt. 2006); In re Keen Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997); accord In re Sounds Distrib. Corp., 122 B.R. 952, 956 (Bankr. W.D. Pa. 1991) ("The burden of proof as to the reasonableness of the requested compensation lies with the applicant"). The applicant has the burden of proving that the services rendered were actual and necessary, and that the compensation sought was reasonable. In re Bennett Funding Group, Inc., 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). The burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N. D. Ill. 1996) (quoting In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N. D. Ill. 1987)). Therefore, any uncertainties due to poor record keeping, for example, are resolved against the applicant. In re Poseidon Pools of Am., 216 B.R. 98, 100-101 (E.D.N.Y. 1997). As set forth below, the professionals have not met their burden of proof with respect to certain fees and expenses.

2. **Reasonableness of Fees**

15. Section 330 focuses on reasonableness and benefit to the estate of the professionals' services. In re Lederman Enters., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a benefit to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997) (citing In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)). Expenses are actual if they are actually incurred, and necessary if "reasonably needed to accomplish proper representation of the client." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005).

16.     The Court has an independent burden to review fee applications "lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)). Under Section 330, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it has already approved the professional's retention under Section 327 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995). See also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d at 262, 263 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

### B.     All Professionals

17.     The Debtors represented to the Court that a Chapter 7 case would yield a .1% distribution to creditors, while a Chapter 11 case would yield a .6% recovery to creditors. See Clingman Affidavit at ¶ 38. Therefore, according to the Debtors, the Plan met the best interest test. Id. As set forth above, the recovery for priority and unsecured creditors was dependent on recovering $2,265,000 in cash from "Proceeds from Vendor Avoidance Actions." See Amended Liquidation Analysis.

18.     At least as of July 2010, the Debtors appeared to be well short of their goals. According to the fee application of SAM (the "SAM Fee Application") (ECF # 1195), as of May 31, 2010, SAM had obtained recoveries of $1,216,964.46 for the estate from the settlement and resolution of preference actions. Out of this amount, $980,010.75 was remitted to the Debtors. See SAM Fee Application at ¶ 17. In addition, SAM reported that it remitted an additional $218,163.20 to the Debtors for the month of June 2010 (ECF # 1183). Thus, the total remitted by SAM to the Debtors was $1,198,173.95 as of June 2010. On August 20, 2010, the Debtor filed the July MOR. The Debtors reported that they received only $24,296.22 for that month.

See July MOR at Chapter 11 Post-Confirmation Schedule of Receipts and Disbursements. A copy of the July MOR is attached as Exhibit E.

19. In filed documents, therefore, the Debtors had reported collecting, at most, approximately $1.225 million in preference recoveries, or approximately $1 million less than their stated goal of $2,265,000. The United States Trustee has since requested a status of collections from the Debtors' counsel, and is satisfied that the Debtors have pending preference settlements that may in the aggregate exceed $2,265,000. As of this date, however, the unsecured creditors have not received any distributions.

20. The full payment of professional fees at this time is unreasonable under 11 U.S.C. § 330 and the full request should be denied. Taxman, 49 F.3d at 316. Simply put, it is not reasonable for professionals to receive over $7 million in fees and expenses, when unsecured creditors have not received any distribution. In connection with the reasonableness requirement, it appears that the Debtors and the Committee committed a tactical error by not insisting on a carveout at the beginning of the cases from the Prepetition Lenders to cover all administrative and priority debt, as well as to fund a distribution to unsecured creditors. These problems warrant a fee reduction of ten percent.

21. Alternatively, the United States Trustee submits that a ten percent holdback is appropriate. Similar to a holdback in connection with interim awards, the holdback will incentivize the professionals to fulfill all commitments upon which the Court relied in confirming the cases. In re Child World, Inc., 184 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) (courts commonly use holdbacks to moderate potentially excessive interim allowances and to offer an incentive to timely resolution of the case). The Debtors can file a certification with the Court if they meet their confirmation goals, at which point the Court can authorize the final ten percent.

### C. Specific Billing Issues

### 1. The Debtors' Professionals

#### a. Willkie Farr & Gallagher LLP

22. Section 330 requires that fee applications, "standing alone . . . contain sufficient detail" regarding the services performed by the applicants. See In re Brous, 370 B.R. 563, 569 (Bankr. S.D.N.Y. 2007). Additionally, "[e]ntries concerning communications . . . should identify the parties and the nature of the communication," while "[e]ntries relating to conferences or hearings should identify the subject of the hearing, and explain, where appropriate, why more than one professional from the applicant participated." Id. at 569-70.

23. Because professionals have the burden of proving the reasonableness of their fee requests, they must provide specific and detailed time records. To that end, the Guidelines require that:

> Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; …

See United States Trustee Guidelines, Section II (D)(4); see also, In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997):

> In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.

Many of the time entries made by WF&G's attorneys and paraprofessionals are vague and/or lumped and, thus, do not comply with the Guidelines. The following are only some examples of this conduct:

| Date | Professional | Description |
|---|---|---|
| 4/03/2009 | John Longmire | T/cs and corr. w/ L. Cohen, C&H, A. Sorkin, P. Allman, others re: Value City case issues (1.2). |
| 4/10/2009 | John Longmire | T/cs re: Value City issues (.4). |

| 4/14/2009 | John Longmire | Corr. w/ L. Cohen, E. Clingman, A. Sorkin re: Value City case issues (.9); review NDA and corr. w/ L. Cohen (.3); review and corr. re: suggestions of BR (.2). |
| 4/14/09 | Andrew Sorkin | Corr. w/ J. Crystal, L. Cohen, J. Linder re: various case issues (.4). |
| 2/2/10 | John Longmire | Corr. w/ B. Waxman, L. Cohen, A. Sorkin, E. Clingman, A. Samet re: Value City claims issues (8). |

24. In addition, WF&G allows certain professionals to take car service or taxis home or to charge meals, to be billed to the estate, on a seemingly routine basis. A professional is not entitled to car service or a meal if that professional is working a few hours on the Debtors' case on non-emergency matters as was done in these cases:

| 3/24/09 | Longmire -$213.15 (reflected in the April 2009 invoice). | TOTAL Longmire Entries 3/24/09 - 4.9 Hours |
| 6/9/09 | Linder - TransportationTaxi, Car Service, & Parking - $21.70; local meal $20. | TOTAL Linder Entries 6/9/09 - 5.6 Hours |
| 7/14/09 | Tricomi -Local meal $20 | TOTAL Tricomi Entries 7/14/09 - 5 Hours |
| 7/28/09 | Longmire-Transportation - $77.25. | TOTAL Longmire Entries 7/28/09 - 4.6 Hours |

25. The United States Trustee requests an appropriate reduction to account for vague and/or lumped time entries. WF&G requested a total reimbursement of $7,049.20 for local meals and $13,743.21 for local transportation. The United States Trustee requests that these amounts be denied unless WF&G provides an appropriate explanation as to why these expenses are reasonable. Alternatively, the United States Trustee requests an opportunity to conduct either

11

formal or informal discovery to further investigate questionable time and expense entries.

      **b.**    **Other Professionals of the Debtors**

26. The United States Trustee has reviewed the fee applications of the rest of the Debtors' professionals (see Exhibit A) and has no specific objection to those fee applications.

    **2.**    **The Committee's Professionals**

      **a.**    **Otterbourg Steindler Houston & Rosen, PC**

27. As stated above, OSH&R's retention was approved with the understanding that the firm would not review the 2008 Acquisition. Instead, this role was assigned to SA. In an oral decision dated December 4, 2008, the Court approved OSH&R's retention, but "with strings attached." (Tr. at 106: 13-15) (the "Retention Decision") (ECF # 1064). OSH&R was told by the Court to be careful about "duplication of effort" with SA. Id. 19-20.

28. Many of the time entries made by OSH&R's attorneys and paraprofessionals are vague and/or lumped and, thus, do not comply with the Guidelines. As importantly, they do not allow the United States Trustee to monitor these records for duplication or to determine whether OSH&R was involved in some way in the 2008 Acquisition investigation. The following are examples of vague entries:

| Date | Professional | Description |
| --- | --- | --- |
| 12/16/2009 | WMS | Exam. of Documents: plan issues (.4) |
| 12/17/2009 | WMS | Conference out of Office: A. Rosen- Investigation status (.5) |
| 12/17/2009 | DMP | Conference out of the office: WMS and A. Rosen regarding status of investigation (1.3) |
| 2/1/2010 | SJB | Examine Documents: Overview of SA investigation analysis (.3) |

| 3/2/2010 | WMS | Examine Documents: Plan (.3). |
| 3/3/2010 | WMS | Review File: Plan (.3) |

29. Unless the Applicant supplements the Application to clarify the above-referenced time entries so that the Application complies with the Guidelines, the case law, and Section 330, the Applicant's request for compensation related to all vague entries should be reduced by $10,000. See Brous, 370 B.R. at 569 (noting that "uncertainties due to poor record keeping are resolved against the applicant"). As can be seen, certain of the entries do appear to relate to the investigation of the 2008 Acquisition by SA, which is an inappropriate area of inquiry by OSH&R.

30. In addition, as this Court is aware, OSH&R was retained over the objection of the United States Trustee. The Court stated that the matter was a close call, but that OSH&R got over the bar but they "nick[ed] it on the way over." Tr. 103: 24-25 - 104: 1. Attached as Exhibit F are those time entries culled from OSH&R's time records that relate to the retention objection (amounts are underlined). The time-value of these services totaled $15,920.00. The estate should not bear the cost of OSH&R's efforts to get itself retained in the face of the objections. In re Brous, 370 B.R. at 571 (not allowing fees in connection with fee related litigation).

    **b.**    **SilvermanAcampora, LLP**

31. The United States Trustee has expressed concerns about certain expenses charged by SA, such as secretarial overtime and miscellaneous expenses. In response, SA and the United States Trustee have agreed that SA will reduce its expense request by $1,358.89.

    **c.**    **Other Professionals of the Committee**

32. The United States Trustee has reviewed the fee applications of the rest of the Committee's professionals (see Exhibit A) and has no specific objection to those fee applications.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the objections herein and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
August 24, 2010

Respectfully Submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Greg M. Zipes
Greg M. Zipes (GMZ-4539)
Trial Attorney
33 Whitehall Street
21st Floor
New York, New York 10004
Tel. No. (212) 510-0500