UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re                                                 :
                                                      :       Chapter 11
Value City Holdings, Inc.,                            :
                                                      :       Case No. 08-14197 (JMP)
            Debtor.                                   :
------------------------------------------------------x

## MEMORANDUM DECISION REGARDING FINAL FEE APPLICATIONS

APPEARANCES:


WILLKIE FARR & GALLAGHER LLP
*Attorneys for the Debtors*
787 Seventh Avenue
New York, New York 10019

 John C. Longmire, Esq.
 Andrew D. Sorkin, Esq.

STORCH AMINI & MUNVES, P.C.
*Special Counsel for the Debtors*
2 Grand Central Tower
140 East 45th Street
New York, New York 10017

 Bijan Amini, Esq.
 Avery Samet, Esq.

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
*Attorneys for the Official Committee of Unsecured Creditors*
230 Park Avenue
New York, New York 10169

 David M. Posner, Esq.

SILVERMANACAMPORA LLP
*Conflicts Counsel to the Official Committee of Unsecured Creditors*
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753

    Adam L. Rosen, Esq.

UNITED STATES DEPARTMENT OF JUSTICE
Office of the U.S. Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004

    Greg Zipes, Esq.

James M. Peck
UNITED STATES BANKRUPTCY JUDGE

    The Office of the United States Trustee (the "UST") objects[1] to final fee applications submitted by Willkie Farr & Gallagher LLP ("Willkie") as counsel for Value City Holdings, Inc. ("Value City" or the "Debtor" and with its affiliated debtors, the "Debtors") and Otterbourg, Steindler, Houston & Rosen P.C. ("OSH&R," together with Willkie and other applicants seeking final compensation, the "Professionals"[2]) as counsel for the Official Committee of Unsecured Creditors (the "Committee"). The Professionals seek final compensation totaling $7,051,938.88 in fees and $226,745.81 in expenses.

    In the Objection, the UST expresses concern that unsecured creditors have not yet received distributions in this liquidating chapter 11 case and recommends either a ten

---

[1] Objection and Response of the United States Trustee to Final Fee Applications, Aug. 24, 2010, ECF Doc. # 1208 (the "Objection").

[2] The other professional firms are Verdolino & Lowey, P.C. (tax and financial consultants for the Debtors); Clingman & Hanger Management Associates, LLC (management counsel for the Debtors); Hilco Real Estate, LLC (real estate consultants and advisors for the Debtors); Storch Amini & Munves P.C. (special counsel for Debtors); Traxi, LLC (financial counsel for the Committee); and SilvermanAcampora, LLP (conflicts counsel for the Committee).

percent reduction in fees or a ten percent holdback on payment pending distributions to unsecured creditors as contemplated in Debtor's plan. Willkie and OSH&R oppose any reduction or holdback, noting that the Professionals worked diligently in formulating a liquidating plan that has been confirmed by the Court, that they have done all that is necessary under the Bankruptcy Code to earn an award of final compensation and that their right to compensation should not be tied to the timing or amount of distributions to creditors under the confirmed plan.

The issue presented arises fairly often in chapter 11 cases at the stage of approving interim fee applications. It is common for the UST, in response to interim applications for the allowance of fees, to file objections that recognize the difficulty in assessing the reasonableness of compensation when the results of the bankruptcy are not yet known and uncertain.[3] The UST position is that it is not prudent to award payment in full of requested fees on an interim basis until events in the case have unfolded and more is revealed about the outcome of the reorganization process.

With this salutary objective in mind, it has become standard practice for interim fee orders to include a holdback in a percentage (often in the range of ten to twenty percent) that is acceptable to the applicant and to the UST with the understanding that the amount held back will be available for distribution at a later date depending on developments in the case and the results achieved. Indeed, in the present chapter 11

---

[3] *See e.g. In re Petrorig I PTE LTD.,* No. 09-13083 (JMP) (Bankr. S.D.N.Y.), Objection of the United States Trustee Regarding Applications for Interim Compensation, Aug. 25, 2010, ECF Doc. # 440 (requesting the Court reduce interim compensation by a "holdback" percentage, pending the final resolution of the cases); *In re Child World, Inc.*, 185 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) (explaining holdbacks are "commonly used by courts to moderate potentially excessive interim allowances and to offer an incentive for timely resolution of the case").

3

cases, the interim fee order provides for a twenty percent holdback on interim monthly compensation.[4]

What distinguishes the current contested matter from this familiar approach to dealing with fees on an interim basis is that it arises in the context of final applications for approval of fees following confirmation of a liquidating plan and completion by the Professionals of substantially all of the work relating to the case. The question is whether this "carrot and stick" approach to motivating retained professionals serves any proper function at the end of the case and whether any portion of the requested final compensation should be treated as contingent compensation to be paid only after the distributions to the unsecured creditors. Stated differently, the Objection argues for an extension of the holdback concept to the award of final compensation as a means to assure that the class of unsecured creditors actually will receive payments in the amounts projected at the time that they voted on the liquidating plan. It is unclear whether this use of the holdback is intended to motivate the Professionals to assure that the unsecured creditors will be paid or whether it is being proposed to penalize the Professionals for having fashioned a plan with only minimal recoveries for the unsecured class. Regardless of the reason, there is no support in section 330 of the Bankruptcy Code for directly tying compensation awards to creditor recoveries.

Although results achieved certainly provide useful context and may be considered in determining whether overall compensation is reasonable under the circumstances of a particular case, the Court agrees with the Professionals and finds that there is no basis

---

[4] Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, Nov. 19, 2008, ECF Doc. # 154.

under applicable law to condition the final allowance of professional compensation on the timing or amount of a distribution to the unsecured creditors under a confirmed plan.

Separately, the UST challenges specific time entries and expenses in the Willkie fee application. The Court has been informed that the parties are still discussing these particular fee requests and as a result will defer ruling on those aspects of the Willkie fee application.

*Relevant Factual Background*

The Debtors operated retail stores in the Midwest, Mid-Atlantic and Southeastern United States for more than 80 years. Following several years of declining sales and profitability, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 26, 2008. Soon thereafter, the Debtors discontinued retail operations, closed stores, liquidated inventory, and attempted to market and sell real estate assets. The cases were difficult, and it was by no means certain that a liquidating plan could be formulated offering any recoveries to unsecured creditors. The Professionals take credit for having worked hard to develop such a plan. The Court approved the Debtors' disclosure statement[5] on March 18, 2010 and confirmed the Debtors' liquidating plan on May 17, 2010,[6] providing that all priority and administrative

---

[5] Order (A) Approving Disclosure Statement with Respect to Debtors' First Amended Joint Plan of Liquidation; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Establishing Procedures For Voting on Debtors' First Amended Joint Plan of Liquidation; (E) Approving Forms of Ballots and Notices; (F) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Debtors' First Amended Joint Plan of Liquidation; and (G) Granting Related Relief, Mar. 18, 2010, ECF Doc. # 1051.

[6] Order Confirming Modified First Amended Joint Plan of Liquidation for Value City Holdings, Inc. and Its Affiliated Debtors, May 17, 2010, ECF Doc. # 1121. Exhibit A to the Order is the Modified First Amended Joint Plan of Liquidation For Value City Holdings, Inc. and Its Affiliated Debtors (the "Plan").

5

claims shall be paid in full and that unsecured creditors will receive a distribution, albeit a very small one. On June 10, 2010, the plan went effective, and in July the Professionals filed final fee applications.

*Legal Standard*

Under the Bankruptcy Code, a debtor or a committee may seek court approval to "employ one or more … professional persons" to assist in the administration of its estate. 11 U.S.C. §§ 327(a), 328(a), 1103(a). These professionals may then seek compensation in accordance with the standards set forth in section 330(a) of the Bankruptcy Code. Under section 330(a)(1) the amount awarded shall consist of:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.

When determining reasonable compensation, section 330(a)(3) provides a reviewing court with the latitude to consider "all relevant factors" but expressly enumerates the following criteria:

> (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

In evaluating the award of professional fees, courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered. *See In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). In addition to conforming with the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules,[7] UST Fee Guidelines[8] and the SDNY Guidelines.[9] Each applicant bears the burden of proving the reasonableness of the compensation sought. *In re JLM, Inc.*, 210 B.R. 19, 24 (2d Cir. B.A.P. 1997). All applications for compensation must be noticed and are subject to objections by interested parties and the UST. The bankruptcy court also has an independent duty to review and evaluate all fee applications. 11 U.S.C. § 330(a)(1); Fed. R. Bankr. P. 2017(b); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).

*Discussion*

Given the standards set forth in section 330 of the Bankruptcy Code, the Court finds that the fees requested are for actual, necessary services and that the Objection should be overruled. The UST's proposed imposition of a holdback would impose a

---

[7] Rule 2016(a) requires "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).

[8] 28 U.S.C. § 586(a)(3)(A) provides that the United States Trustees may review and object to applications for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code and the guidelines adopted by the Executive Office of the United States Trustee (the "UST Guidelines").

[9] Administrative Order re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated April 19, 1995 (the "SDNY Guidelines").

7

contingency that is not contemplated by any of the criteria listed in section 330(a) and that would introduce an unwelcome element of retrospective risk and uncertainty to the award of professional compensation.

### A. The Fact that Distributions Have Not Yet Been Made to Unsecured Creditors Is Not a Relevant Consideration in Determining the Reasonableness of Professional Fees

The UST originally argued that "the payment of an aggregate of over $7 million [in fees] to professionals, with a proposed minimal distribution (0.6%) to general unsecured creditors is not reasonable." Objection p.1. The UST, however, appears to have retreated from this position and no longer challenges the fees due to the modest recoveries under the Plan. 9/1/2010 Hearing Tr. 16:3-5 ("We're not making a judgment call on whether the [0.6%] distribution to unsecured creditors is too low here."). The UST now only argues that a holdback should be imposed as a means to motivate the Professionals to work diligently to achieve the goals of the confirmed Plan. Objection p.9; 9/1/2010 Hearing Tr. 18:13 (submitting that the overall reasonableness is related to the accuracy of the "representations [the Professionals] made at the time of confirmation"); 9/1/2010 Hearing Tr. 22:22-23:6 (arguing that it is appropriate "to holdback some portion" of the requested fees until the 0.6% distribution occurs).

The UST's arguments are not persuasive. There is no basis under applicable law to judge the reasonableness of professional compensation based on the distributions to creditors that are contingent on future recoveries. Fee applications are to be evaluated in light of all "relevant factors" as set forth in section 330(a)(3) of the Bankruptcy Code. The amount or timing of distributions to creditors, however, is not one of the specific

8

factors identified in that section, and the Court does not believe that it should be. Moreover, none of the cases cited by the UST rely on creditor recoveries, or representations of potential creditor recoveries, as a factor to consider in evaluating the reasonableness of professional fees. The UST cites to *In re Taxman* where the Court denied a fee request because the services rendered "could not yield the estate a net gain." 49 F.3d 310, 314 (7th Cir. 1995).

Here, the Professionals rendered services in a manner "commensurate with the expected gain" from those efforts. *Id.* Even if the Professionals turned out to be wrong in dedicating themselves to their clients a "court does not determine 'reasonableness' through hindsight." *In re CCT Communications, Inc.*, 2010 WL 3386947, *5 (Bankr. S.D.N.Y. 2010) (citing to *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y 2007)).

In *In re Brous* the Court awarded fees to a chapter 7 trustee's counsel for two discrete legal services that resulted in "disappointing" outcomes although "the services were nonetheless reasonable at the time that they were rendered." 370 B.R. at 574. The fees here are likewise compensable regardless of the ultimate outcome because a reasonable lawyer would have performed similar services in attempting to maximize the value of the estate in these circumstances. *See In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996). Having performed their services with the objective of achieving a confirmed "pot" plan, the Professionals here are entitled to compensation for those services.

Additionally, the confirmed Plan does not set forth any time frame for distributions to unsecured creditors. The Disclosure Statement made clear that there was uncertainty with respect to the timing and amounts of possible creditor recoveries under

9

the Plan. *See* Disclosure Stmt. Art. VIII (the first factor in the disclosure statement's "certain risk factors to be considered" is that a "substantial amount of time may elapse between the Effective Date and the receipt of a final Distribution under the Plan for certain holders of Claims."). Creditors were on notice of the uncertainties affecting distributions when they voted to accept the Plan.

The UST suggests that the Professionals need the motivation of a holdback to perform their services diligently, but that is a dubious proposition in a case such as this in which special counsel for the Debtor, the firm of Storch Amini & Munves, P.C., has been retained to pursue preference claims to help fund distributions to unsecured creditors on a contingency basis.[10] That source of potential recoveries to creditors will be unaffected by any holdback, and the very concept of a holdback makes no sense in a situation where future compensation is purely contingent. Additionally, at this stage of the case, it is demeaning to reputable law firms to introduce artificial contingencies to their right to receive earned compensation.

### B. *Professional Fees for Attorneys Should Not Be Tied to Success*

The best way to attract skilled professionals to represent clients in bankruptcy cases is by ensuring that fees are commensurate with those of professionals in non-bankruptcy practice. *See generally, In re Drexel Burnham Lambert Group,* 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) (detailing the shift to market-based compensation of bankruptcy professionals "to ensure that bankruptcy cases were staffed by appropriate

---

[10] Order Authorizing the Retention and Employment of Storch Amini & Munves PC as Special Counsel to Analyze and Litigate Preference Claims, Aug. 12, 2009, ECF Doc. # 728.

10

legal specialists"). Section 330 of the Bankruptcy Code has been fashioned with that goal in mind.

The Professionals are to be paid in accordance with their applicable hourly rates and are not entitled to a success fee. Similarly, they should not be penalized if their efforts do not result in substantial recoveries to creditors. Inevitably, the UST's position leads to questioning the concept of success in the context of chapter 11, a subject that is not a proper inquiry in determining reasonableness of fees. *In re CCT Communications, Inc.*, 2010 WL 3386947, *5 (a decision to render services may be reasonable and thus compensable even though it "may turn out wrong in the end"); *see also In re APW Enclosure Sys., Inc.*, 2007 WL 3112414, *3 (Bankr. D. Del. 2007) (collecting cases showing the majority view "rejects the hindsight evaluation of services, [and] recognizes that a successful reorganization is not necessary for compensation to be awarded.").[11]

In this case, creditors voted in favor of a liquidating plan that contemplated a 0.6% recovery instead of liquidation with an expected 0.1% recovery.[12] These estimated recoveries were never assured. Attendant to the modest upside was the potential that recoveries would take longer to realize or might not be achieved at all. To condition professional fees on quantitative tests or outcomes would introduce a risk factor to

---

[11] An exception to this general rule is the "rare and exceptional case" where a party requests an upward or downward adjustment to the presumptively reasonable "lodestar" figure (the product of the billing rate and hours expended). *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quotations and citations omitted); *see also In re Grant Assocs.*, 154 B.R. 836, 843 (S.D.N.Y. 1993) (explaining lodestar "standard had been adopted by most courts calculating fees under 11 U.S.C. § 330(a)"). An adjustment to the "lodestar" amount is not before the Court.

[12] *See* Affidavit of W. Edward Clingman, Jr. In Support of Confirmation of the Debtors' Modified First Amended Joint Plan of Liquidation For Value City Holdings, Inc. and Its Affiliated Debtors p.12 (¶38), May 10, 2010, ECF Doc. # 1114.

11

professional services in bankruptcy that is beyond the scope of section 330 and not ordinarily imposed on professionals in non-bankruptcy practice. Moreover, it would add an element of subjectivity (i.e. judging success) that is difficult both to measure and apply.

Because capital structures and estate assets vary from case to case, the distributions to unsecured creditors often are a function of circumstances that are not directly correlated with the efforts of retained professionals. Skilled and experienced professionals are needed, especially in challenging cases such as this, and they should not be penalized by the imposition of contingencies after reasonable services have been performed.

### C.    *The UST's Objection Relating to Specific Fees and Expenses*

In addition to the general objection to the reasonableness of fees, the UST also asserts that certain time entries are vague, inappropriately lumped, or otherwise fail to conform with the UST Guidelines. Objection p.10. This objection has been resolved with all Professionals except for Willkie. The Court has been advised that the UST and Willkie are in the process of reviewing and discussing these specific issues relating to compensation. As a result, the Court will defer ruling on those particular aspects of the Objection in order to give the parties the opportunity to pursue a consensual resolution.

*Conclusion*

For the reasons stated, the Court overrules the Objection to the extent that it seeks a ten percent reduction or holdback. The Court reserves judgment on the Objection as it relates to specific time entries or fee requests of Willkie. The parties are directed to advise the Court regarding the status of currently open issues within twenty (20) days from the date of entry of this Memorandum Decision.

SO ORDERED.

Dated: New York, New York
      September 22, 2010

                               *s/ James M. Peck*
                               Honorable James M. Peck
                               United States Bankruptcy Judge