UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

Value City Holdings, Inc.,

Debtor.

_____/

Case No. 08-14197 (JMP)
Chapter 11

### CREDITOR TERESA SCHEFF'S RESPONSE TO DEBTORS' OMNIBUS OBJECTION TO THE ALLOWANCE OF CERTAIN PERSONAL INJURY CLAIMS [CLAIMS MOTION NO. 25]

Creditor, TERESA SCHEFF [CREDITOR SCHEFF], by her undersigned counsel, NORMAN YATOOMA & ASSOCIATES, P.C., responds to Debtors' above August 15, 2011 Omnibus Objection to her proof of claim [Claim No. 2302] of $90,000 as follows:

A.  This Court should deny the objection, because Creditor Scheff's claim is valid.

B.  This Court should deny the objection, because allowance of Creditor Scheff's claim will not diminish the recoveries available to holders of general unsecured claims.

C.  This Court should deny the objection, because the fact that Creditor Scheff's claim is in a pending personal injury action subject to the Bankruptcy Code's automatic stay as of the October 26, 2008 bankruptcy petition filing date[1] does not make her claim any less valid than any other general unsecured claim.

D.  This Court should deny the objection, because the fact that "Debtors dispute their liability with regard to causation and/or asserted damages [on] these claims"[2] does not make her claim any less valid than any other general unsecured claim.



---

[1] 8/15/11 Debtors' Omnibus Objection, para 14.
[2] 8/15/11 Debtors' Omnibus Objection, para 14.

1

E.  This Court should deny the objection because the fact that the cognizant state court had not entered a judgment in Creditor Scheff's personal injury action against Debtors[3] does not make her claim any less valid than any other general unsecured claim.

F.  This Court should deny the objection, because Debtors' contention that personal injury claimants, including Creditor Scheff, "may receive unwarranted recoveries from the Debtors' estates, to the detriment of Debtors' legitimate creditors" is only speculative and conjectural. Debtors have not produced any evidence to support their contention, because such evidence does not exist. Debtors are continuing the same unjustified and unreasonable discrimination against personal injury claimants referred to above.

G.  As explained below, in Creditor Scheff's case, the best solution is a stipulation to terminate the automatic stay to permit the state court action to continue to resolution.

H.  When Creditor Scheff received notice of the bankruptcy petition, her personal injury claims were about to go before an alternative dispute resolution panel [in Michigan called a case evaluation panel] for a November 17, 2008 case evaluation hearing.[4]

I.  For almost all Michigan civil cases, case evaluation is mandatory.[5]

J.  A case evaluation hearing usually occurs within a few months of the scheduled final pretrial conference date, the last major date before the trial date.

K.  In Michigan, the case evaluation process includes the following steps:

   1. Within 14 days before the scheduled hearing date, each party files a case evaluation summary outlining the party's position on liability (facts and law), damages, and any other major subjects with the case evaluation office.[6]

---

[3] 8/15/11 Debtors' Omnibus Objection, para 14.
[4] Exhibit 1, 9/24/11 Macomb County, Michigan Circuit Court Case No. 2008-000185-NZ Case Evaluation Notice.
[5] Exhibit 2, Michigan Court Rule 2.403(A)(2).
[6] Exhibit 2, Michigan Court Rule 2.403(I)(1).

2

2.  Shortly afterward, the three case evaluation panel members receive and review the case evaluation summaries.[7]

3.  A party filing a summary late is subject to a financial penalty.[8]

4.  On the case evaluation hearing date, the parties' attorneys and occasionally the parties appear and present their positions to the panel orally. Panel members question the attorneys extensively and often confer with each attorney separately.[9]

5.  The case evaluation goal is encourage and produce settlements.[10]

6.  At the end of the hearing or shortly afterward, the panel produces a case evaluation amount.[11]

7.  Each party has 28 days to accept or reject the case evaluation.[12]

8.  The applicable Michigan Court Rule, MCR 2.403, includes subrule (O). Under this subrule, if a party rejects the case evaluation, and fails to improve his/her/its position at trial by at least 10% compared to the case evaluation, the rejecting party becomes liable to the other party for that party's costs and attorney fees incurred from the rejection date [28 days after the case evaluation hearing date] forward. The rejecting party receives credit for certain assessable costs and interest. But the liability remains.[13]

9.  Thus, for Plaintiffs, rejecting the case evaluation is high-risk.

10. Therefore, a substantial number of cases resolve through case evaluation.

11. Terminating the automatic stay and letting Creditor Schiff's state court case proceed will lead to an early case evaluation hearing and a probable resolution of her case.

---

[7] Exhibit 2, Michigan Court Rule 2.403(D)(1), (I)(1).
[8] Exhibit 2, Michigan Court Rule 2.403(I)(2).
[9] See Exhibit 2, Michigan Court Rule 2.403(J).
[10] *Joan Automotive Industries, Inc v. Check*, 214 Mich. App. 383, 388, 543 N.W.2d 15 (1995).
[11] Exhibit 2, Michigan Court Rule 2.403((K)(1).
[12] Exhibit 2, Michigan Court Rule 2.403(L)(1).
[13] Exhibit 2, Michigan Court Rule 2.403(O).

3

L.  On January 11, 2008, Creditor Schiff sued Debtor Value City of Michigan d/b/a Value City Department Stores **[DEBTOR VALUE CITY]** for negligence based personal injuries resulting from three glass mirrors falling on or near her.[14]

M.  On or about February 21, 2008, Debtor Value City answered the Complaint and asserted several affirmative defenses.[15]

N.  As a result of discovery, Creditor Scheff has produced the evidence listed below.

## NEGLIGENCE ACTION FACTS AND PROOFS

Teresa Scheff is a 47-year old woman working for Oakland Imaging Diagnostic Center doing CAT scans and mammograms for patients full-time. She had shopped at Defendant Value City's store located at 28300 Dequindre Road, Warren, Michigan, during her lunch break about five times, but she had never shopped there for mirrors. On November 29, 2007, shortly after 12:00 noon, Ms. Scheff was shopping there to buy personal Christmas decorations for her mammography department. She found some decorations that she liked but left them and began looking at mirrors. The mirror display had three shelves.[16] She focused on a mirror on the second shelf about 4 feet, 8 inches off the ground, about at her chin. The mirror was oval. It was about 18 inches wide and about 30 inches high. It was sitting on its tall edge. The mirror had rounded edge and a wood border, and it was sitting resting on a lip at the bottom edge of the display shelf.[17]

On seeing the mirror, Ms. Scheff put both hands behind the mirror, held it in the middle, and brought it forward. **Two other "mirrors…were stacked horizontally on top of it that**

---

[14] Exhibit 3, 1/11/08 Complaint and Jury Demand, paras. 9-12.
[15] Exhibit 4, 2/21/08 Defendant's Answer to Plaintiff's Complaint, Affirmative Defenses, and Reliance Upon Jury Demand.
[16] *See* Exhibit 5, Photographs of the Mirror Display Area Taken on 9/1/08 at Another Michigan Value City Store. Plaintiff will testify that these photographs are the exact type of display area at the Dequindre Value City store on November 29, 2007.
[17] Exhibit 6, 7/18/08 Deposition of Teresa Scheff [Scheff Dep], pp 6, 14-22, 25; Exhibit 3, 1/11/08 Complaint [Complaint], paras 6, 8.

4

[she] could not see[,] and they came crashing down on me."[18] **They were not on a shelf.** The first mirror had a square corner. **That mirror hit her in the nose and broke it.** "Another customer came around the corner and asked me if I was okay[,] and I said no. And then another gentleman came around the corner...and asked if I would like him to get the manager[,] and I said yes. **And I waited and waited[,] and nobody came.** Then[,] a young employee from Value City came with a broom and dustpan and told me that – don't worry, I wasn't gonna be responsible for paying those. And by this time[,] I knew I had to return back to work with the decorations that I was intending to get."[19] So, she picked a few, "went to the checkout counter, paid for my merchandise[,] and went back to work."[20]

Back at work, Ms. Scheff called Defendant and "asked to speak to the manager...I was connected with Mr. Sam Hines." [21] He was the store manager.[22] Though inspecting the mirror area between 8:00 AM and 10:00 AM, he did not notice the dangerous condition **and did nothing about it.**[23] She spoke with him and arranged to speak with him in person later that afternoon.[24] After her last patient whose care **began** at 2:30 pm, she returned to the store, "went to the checkout counter and asked the cashier if she could please page Mr. Hines."[25] **Although the cashier paged him "[n]umerous times," he failed to appear.**[26] "I stood and waited for approximately 20 minutes for him to meet me there."[27] When he finally appeared, he claimed "that he was looking for me when the incident occurred, but he couldn't find me."[28] Mr. Hines

---

[18] Exhibit 6, Scheff Dep, p 23.
[19] Exhibit 6, Scheff Dep, p 27.
[20] Exhibit 6, Scheff Dep, pp 32, 27.
[21] Exhibit 6, Scheff Dep, p 29.
[22] Exhibit 7, 8/14/08 Deposition of Sam Hines [Hines Dep], pp 10-11.
[23] Exhibit 6, Hines Dep, pp 36-37.
[24] Exhibit 6, Scheff Dep, p 29; Exhibit 7, Hines Dep, pp 30-31.
[25] Exhibit 6, Scheff Dep, p 30.
[26] Exhibit 6, Scheff Dep, p 30.
[27] Exhibit 6, Scheff Dep, p 30.
[28] Exhibit 6, Scheff Dep, p 30.

never even offered her a seat, let alone talked with her. Instead, he just kept her standing in the checkout area and "took my statement down on a pad of paper."[29] His concern was "[j]ust the facts. Just the details."[30] In March 2008, he transferred to the Westland store, and in May or June 2008, the store closed.[31]

**Ms. Scheff suffered a broken nose.**[32] She saw her family doctor, Dr. Alan Belkin of Oakland Family Practice. He referred her to Dr. Douglas Kubek for surgery. On January 8, 2008, Dr. Kubek saw her and found "thickening of the nasal bone on the right, edema of the turbinates and mucosa bilaterally, and a deviated septum left. Additionally, she underwent a nasal endoscopy showing a severe septal deviation left with edema of the turbinates and mucosa."[33] **She was having trouble breathing.** He prescribed medication, and Ms. Scheff decided on surgery. But her nose area was swollen. Before operating, Dr. Kubek had to wait for the swelling to go down.[34] **On March 19, 2008, Dr. Kubek operated on Ms. Scheff at Beaumont Hospital.**[35] **From then until March 27, 2008, she had to wear a cast, and she could not lift more than five pounds or blow her nose.**[36] **Thus, she had to sleep upright.**[37] **On that date, Dr. Kubek prescribed Vicodin.**[38] **At Dr. Kubek's April 1, 2008 examination, he found "swelling."**[39] By her May 23, 2008 examination, her nose had healed. The pictures show her

---

[29] Exhibit 6, Scheff Dep, p 30. *Accord,* Exhibit 7, Hines Dep, p 30.
[30] Exhibit 6, Scheff Dep, 30.
[31] Exhibit 6, Scheff Dep, pp 10, 11, 13.
[32] Exhibit 8, 5/27/08 Dr. Kubek Letter; Exhibit 9, Dr. Kubek Medical Records, 11/29/07 Oakland Medical Group Record & 12/11/07 Oakland Medical Group CT Scan Report.
[33] Exhibit 8, 5/27/08 Dr. Kubek Letter. Accord, Exhibit 9, Dr. Kubek Medical Records, 1/8/08 Dr. Kubek Letter.
[34] Exhibit 6, Scheff Dep, pp 14-15, 34, 38; Exhibit 8, 5/27/08 Dr. Kubek Letter; Exhibit 10, 5/23/08 Dr. Kubek Letter; Exhibit 11, Beaumont Hospital Medical Records; Exhibit 9, Dr. Kubek Medical Records.
[35] Exhibit 11, 3/19/05 Beaumont Hospital Medical Records, 3/19/08 Operative Report [**This report is immediately after the Record Copy Services Front Page**].
[36] Exhibit 11, 3/19/08 Beaumont Hospital Medical Records, 3/19/08 Discharge Order and Instructions [**This record is this exhibit's last record**].
[37] Exhibit 6, Scheff Dep, pp 11-12.
[38] Exhibit 9, Dr. Kubek Medical Records, 3/27/08 Prescription.
[39] Exhibit 8, 5/27/08 Dr. Kubek Letter; Exhibit 9, Dr. Kubek Medical Records, 4/1/08 Record..

6

nose right after the incident on November 29, 2007 and after the surgery.[40] Almost eight months after suffering her broken nose, as of her July 18, 2008 deposition date, **"I still have trouble breathing. I still have pain at the bridge of my nose."**[41]

## NEGLIGENCE ACTION LIABILITY

Debtor Value City is liable for negligence. Since Mr. Hines examined the area about 2-4 hours before the mirror fell on Ms. Scheff, Debtor Value City knew or should have known of the dangerous condition. This knowledge triggered Debtor Value City's duty to exercise reasonable care to protect customers, like Ms. Scheff. Debtor Value City failed to remove the dangerous condition and thus failed to exercise reasonable care. Debtor Value City's failure to do so proximately caused her injuries. Therefore, Debtor Value City is liable for negligence.

## NEGLIGENCE ACTION DAMAGES

From Debtor Value City's negligence, Ms. Scheff suffered considerable damages. Although Ms. Scheff had Blue Cross Blue Shield PPO coverage through her employer, she had to pay the One Thousand Five Hundred and 00/100 ($1,500.00) Dollar deductible. Since her coverage required a 20% copay, she had to pay that to Beaumont Hospital and Dr. Kubek on a payment plan.[42] She had to use 12 days of her 15 days total vacation time, over two of her three weeks total vacation time, for time off due to her injury.[43] **About a year after her injury, she still was in pain. She still had trouble breathing.** As a result, her injury's impact was continuous and substantial.

---

[40] Exhibit 12, 11/29/07 Pictures & 3/19/08 Post-Surgery Pictures.
[41] Exhibit 6, Scheff Dep, p 35.
[42] Exhibit 13, 8/8/08 Beaumont Hospital Billing Sheet & Current Dr. Kubek Billing Sheet.
[43] Exhibit 6, Scheff Dep, pp 7, 9-10.

7

O.    As a result of Debtor Value City's October 26, 2008 bankruptcy petition and the resulting automatic stay, Creditor Scheff could not proceed with her state court action, she ceased her state court action, the scheduled November 17, 2008 case evaluation hearing could not occur, and the state court ordered administrative closing.[44]

P.    On March 6, 2009, Creditor Scheff filed her proof of claim.[45]

Q.    Creditor Scheff has provided sufficient proof of her claim.

R.    Accordingly, Creditor Scheff's claim is valid, and denial of Debtors' Omnibus Objection on her claim is in order.

1. Creditor Scheff admits that the Court has subject matter jurisdiction to hear Debtors' Omnibus Objection.

2. Creditor Scheff admits the allegations as true.

3. Creditor Scheff admits the appointment and appointment amendment allegations as true. Creditor Scheff neither admits nor denies the disbandment allegation due to insufficient information.

4. Creditor Scheff admits the allegations as true.

5. Creditor Scheff neither admits nor denies the consolidation allegations due to insufficient information.

6. Creditor Scheff admits the January 30, 2009 Bar Date Order allegations as true and the various bar date allegations as true. Creditor Scheff neither admits nor denies the notice mailing allegations in general due to insufficient information, but admits the notice mailing allegations as to her as true. Creditor Scheff neither admits nor denies the publication notice allegations due to insufficient information.

7. Creditor Scheff admits the Confirmation Order July 26, 2010 deadline allegations as true. Creditor Scheff neither admits nor denies the Conformation Order notice mailing allegations due to insufficient information. Creditor Scheff admits the Confirmation Order notice mailing allegations as to her as true.

---

[44] Exhibit 14, 1/8/09 Macomb County Circuit Court Order for Administrative Closing Due to Bankruptcy Stay, Macomb County Circuit Court Case No. 2008-000185-NZ.
[45] Exhibit 15, 3/6/09 Proof of Claim & 3/12/09 Acknowledgement of Receipt of Proof of Claim.

8. Creditor Scheff neither admits nor denies the allegations due to insufficient information.

9. Creditor Scheff denies that the Court should disallow her claim due to lack of supporting evidence and denies that her claim lacks supporting evidence.

10. Creditor Scheff neither admits nor denies that all the claims involved are general unsecured claims due to insufficient information. Creditor Scheff admits that her claim is a general unsecured claim. Creditor Scheff admits that the Plan is a "pot" plan providing for pro rata distributions to general unsecured creditors. Creditor Scheff denies that her claim is an invalid claim, and that allowance of her claim will diminish recoveries to holders of other valid general unsecured claims. Therefore, Creditor Scheff requests entry of an order allowing her claim as valid.

11. Creditor Scheff admits the allegations as true.

12. Creditor Scheff admits the legal principles as true and applicable.

13. Creditor Scheff admits the legal principle as true and applicable.

14. Creditor Scheff denies the allegations as applied to her claim and reasserts her paragraphs A-N above.

15. Creditor Scheff denies the Reservation of Rights, because except for the United States Trustee, no other known party would have standing to object to her proof of claim.

16. While recognizing Bankruptcy Rule 3007(a) as true and applicable, Creditor Scheff asserts that she did not receive the required 30-day notice of the Omnibus Objection.

17. Creditor Scheff neither admits nor denies the allegations due to insufficient information.

## **REQUEST FOR RELIEF**

WHEREFORE, Creditor, TERESA SCHEFF, respectfully requests this Court to:

    a. Deny the Omnibus Objection as applied to her claim.

    b. Allow her claim as valid.

    c. Adjourn the scheduled September 15, 2011 hearing on Debtors' Omnibus Objection to her claim to permit negotiations between Debtors and her to

resolve the objection to her claim without a hearing to approximately October 27, 2011.

    d.    Grant her further relief in accordance with principles of equity and justice.

Dated: September 7, 2011

NORMAN YATOOMA & ASSOCIATES, P.C.
By: Howard Yale Lederman (P36840)
Attorneys for Creditor Teresa Scheff
1900 S. Telegraph Rd.
Bloomfield Hills, MI 48302
(248) 481-2000
hlederman@normanyatooma.com

## CERTIFICATE OF SERVICE

  Chelsea Gornbein hereby certifies that on September 8, 2011, she served a copy of **CREDITOR TERESA SCHEFF'S RESPONSE TO DEBTORS' OMNIBUS OBJECTION TO THE ALLOWANCE OF CERTAIN PERSONAL INJURY CLAIMS [CLAIMS MOTION NO. 25]**, via facsimile and first class mail, postage pre-paid, to the following:

John C. Longmire  
Willkie Farr & Gallagher LLP  
787 Seventh Ave.  
New York, NY 10019  
Fax: 212-728-8111

  The above statements are true to the best of my knowledge, information, and belief.

Dated: September 8, 2011

                 /s/ Chelsea Gornbein  
                 Chelsea Gornbein, Legal Assistant

## **LIST OF EXHIBITS**

Exhibit 1, 9/24/11 Macomb County, Michigan Circuit Court Case No. 2008-000185-NZ Case Evaluation Notice.

Exhibit 2, Michigan Court Rule 2.403.

Exhibit 3, 1/11/08 Complaint and Jury Demand.

Exhibit 4, 2/21/08 Defendant's Answer to Plaintiff's Complaint, Affirmative Defenses, and Reliance Upon Jury Demand.

Exhibit 5, Photographs of the Mirror Display Area taken on 9/1/08 at Another Michigan Value City Store.

Exhibit 6, 7/18/08 Deposition of Teresa Scheff.

Exhibit 7, 8/14/08 Deposition of Sam Hines.

Exhibit 8, 5/27/08 Dr. Kubek Letter.

Exhibit 9, Dr. Kubek Medical Records.

Exhibit 10, 5/23/08 Dr. Kubek Letter.

Exhibit 11, Beaumont Hospital Medical Records.

Exhibit 12, 11/29/07 Pictures & 3/19/08 Post-Surgery Pictures.

Exhibit 13, 8/8/08 Beaumont Hospital Billing Sheet & Current Dr. Kubek Billing Sheet.

Exhibit 14, 1/8/09 Macomb County Circuit Court Order for Administrative Closing Due to Bankruptcy Stay, Macomb County Circuit Court Case No. 2008-000185-NZ.

Exhibit 15, 3/6/09 Proof of Claim & 3/12/09 Acknowledgement of Receipt of Proof of Claim.